Daniel A. CHAPP and Ethel Jean Chapp, Plaintiffs,

v.

Philip BOWMAN, Co–Executor of the Estate of Florida Bowman, Deceased, and Jane Doe, Co–Executrix of the Estate of Florida Bowman, Deceased, and Mark D. Kowalske, d/b/a Century 21, Kowalske & Associates, jointly and severally, Defendants.

No. 1:90–CV–775.

United States District Court,
W.D. Michigan, S.D.

Oct. 2, 1990.

John A. Obee, Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald. P.C., Southfield, Mich., Curt A. Benson, Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C., Grand Rapids, Mich., for plaintiffs.

Peter J. Vellenga, Boyne City, Mich., for defendant Philip Bowman.

Richard W. May, Boyne City, Mich., for defendant Mark D. Kowalske.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND PRELIMINARY INJUNCTION

MILES, Senior District Judge.

This matter is before the Court upon the plaintiffs' motion for a preliminary injunction. A hearing was held upon plaintiffs' motion on September 24, 1990, at which time the plaintiffs and defendant Philip Bowman presented evidence and arguments in support of their respective positions.[1] Upon due consideration of the evidence and arguments presented by the parties and of the pleadings on file in this case, the Court now issues a preliminary injunction. The issuance of this injunction is based upon the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Based upon the testimony and exhibits received at the hearing, and upon the verified complaint on file in this case, the Court makes the following findings of fact as required by Fed.R.Civ.P. 52(a)[2]:

1. The plaintiffs Daniel and Ethel Jean Chapp are a husband and wife residing in Boyne City, Michigan and in Southfield, Michigan. They own a home and other real property located in Boyne City, Michigan.

2. The defendant Philip Lee Bowman resides in Boyne City, Michigan. Mr. Bow-

---

1. Mr. Peter Vellenga appeared on behalf of defendant Bowman. Defendant Mark Kowalske appeared at the hearing unrepresented by counsel. Defendant Jane Doe, whose identity was not known to the plaintiffs prior to the hearing, has not been served with process and did not appear at the hearing.

2. Any findings of fact which contain conclusions of law should be considered as such.

man is the co-executor of the estate of his mother, Florida Bowman, now deceased.

3. The defendant Jane Doe has been identified as Patti Hamilton. Mrs. Hamilton, who has not yet been served with process in this proceeding, resides in Shoshone, Idaho. Ms. Hamilton is the sister is defendant Bowman and is the co-executrix of the estate of Florida Bowman.

4. The defendant Mark Kowalske is a real estate broker doing business in Charlevoix County, Michigan.

5. The plaintiffs Daniel and Ethel Jean Chapp are the owners of residential real property located at 435 Pearl Street in Boyne City, Michigan.

6. On or about August 9, 1990, Daniel Chapp learned from defendant Bowman that residential real property located at 429 Pearl Street, Boyne City, was for sale. This property is located adjacent to the Chapp property. The property located at 429 Pearl Street is owned by the estate of Florida Bowman.

7. Upon discovering that the 429 Pearl Street property was for sale, the Chapps immediately went to the Century 21 real estate office, with whom the property was listed for sale. A Century 21 employee, Lynda Christensen, informed the Chapps that the asking price of the property was $59,900.00. She also showed the Chapps several documents pertaining to the property, including an appraisal valuing the property at $59,900.00. She did not show the Chapps the listing agreement which had been entered into between defendant Kowalske (doing business as Century 21) and defendants Bowman and Hamilton on behalf of the estate of their mother.[3]

8. Also on August 9, 1990, the Chapps executed a bona fide written offer to purchase the 429 Pearl Street property for $59,900.00. The terms of payment the Chapps proposed to make in their offer were payment of the full price, contingent on the Chapps' ability to obtain a specified mortgage on the property, or, barring nonapproval of the mortgage, sale upon land contract terms. The offer, which included a $200.00 earnest money deposit, was by its terms to remain open for 14 days.

9. The Chapps subsequently met with Mr. Kowalske and requested that he relay their purchase offer to Mr. Bowman. In response, Mr. Kowalske contacted Mr. Bowman by telephone and verbally advised him of the Chapps' offer to purchase the property.

10. On or about August 11, 1990, the Chapps attended an auction of personal property of the Florida Bowman estate. At the auction, Mrs. Chapp was introduced to Mr. Bowman's wife.

11. On August 15, 1990, Mr. Kowalske informed the Chapps that there was a "problem" with the sale of the property for the following reasons: (1) the proposed financing was a problem due to "religious" reasons, and (2) Mrs. Bowman had prayed on the matter and was having difficulties with a sale to the Chapps. Mr. Kowalske suggested that Mr. Chapp contact Mr. Bowman directly.

12. Later on that same date, Mr. Chapp visited Mr. Bowman at his home to discuss the sale of the property. At this meeting, Mr. Bowman asked Mr. Chapp whether he was a "good Christian" and whether he had "chosen Jesus as his Savior." Mr. Chapp responded that he was a Catholic. Mr. Bowman replied that Mr. Chapp could still find Jesus to be his Savior. Mr. Bowman then informed Mr. Chapp of his belief that a Christian should not go into debt to purchase property.[4]

13. Upon learning of Mr. Bowman's personal beliefs regarding the proposed mortgage of the property, Mr. Chapp verbally offered to purchase the property by

---

3. The evidence is unclear as to whether the 429 Pearl Street home is owned by the estate of Florida Bowman, or by her children Philip Bowman and Patti Hamilton. However, this lack of clarity is not fatal to the plaintiffs' claim. Whichever the case may be, Mr. Bowman's and Ms. Hamilton's authorizations were necessary to authorize the sale or other disposition of the property.

4. Mr. Bowman embraces a religious belief that the Bible prohibits Christians from going into debt. Mr. Bowman, in his own words, "shared [this] Biblical principle" with Mr. Chapp.

paying the full $59,900.00 asking price with cash which he proposed to obtain by withdrawing funds presently held in certificates of deposit.

14. Mr. Bowman informed Mr. Chapp that money was not the problem and that he would sell the property to a "good Christian" for $45,000.00. He also indicated that his wife had a "check in her spirit" about selling to the Chapps. He did not, at that time, definitively reject Mr. Chapp's cash offer.

15. Subsequently, Mr. Chapp asked Mr. Kowalske to contact Mrs. Hamilton and inform her that he and his wife had made a full cash offer to purchase the property. Mr. Kowalske refused to do so.

16. On August 23, 1990, Mr. Kowalske informed Mr. Chapp that the property had been withdrawn from the market. Neither of the Chapps' offers—either the written offer or Mr. Chapp's verbal offer—were accepted by Mr. Bowman.

17. On August 25, 1990, Ruth Carey, a volunteer tester for the Detroit Fair Housing Center, visited Mr. Bowman at his home under the guise of inquiring about the possibility of purchasing the 429 Pearl Street property for herself and her sister. Mr. Bowman informed Ms. Carey that the property had been for sale and might still be if the "right person" wanted to buy it. He described himself as a "born-again Christian" and suggested that if she and her sister were truly interested in buying, they should both come over and pray with the Bowmans to determine whether they were "right" for the property. He also informed Ms. Carey that he had received a cash purchase offer from persons who lived next door to his mother's house, but had taken the property off the market because of laws against discrimination, and because the Lord had told his wife not to sell to the Chapps. Finally, he suggested that Ms. Carey take another look at the 435 Pearl Street home; he told her she could "put two and two together" and figure out why he had not sold to the owners of that property.

5. Any conclusion of law containing findings of

## CONCLUSIONS OF LAW

In accordance with Fed.R.Civ.P. 52(a), the Court reaches the following conclusions of law:[5]

A. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1343(4) and 42 U.S.C. § 3613. The Court has pendent jurisdiction over the plaintiffs' state law claim.

B. Venue is proper in the Western District of Michigan.

C. 42 U.S.C. § 3604 provides that it shall be unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, ... or to otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

D. 42 U.S.C. § 3613(c)(1) provides that if a discriminatory housing practice has occurred or is about to occur, the court may, *inter alia*, grant any permanent or temporary injunction, temporary restraining order, or other order as appropriate, including an order enjoining the defendant from engaging in such practice.

E. The Court must consider the following elements in determining whether to issue or withhold a preliminary injunction:

(1) Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

(2) Whether the movant has shown irreparable injury.

(3) Whether the preliminary injunction could harm third parties.

(4) Whether the public interest would be served by issuing the preliminary injunction.

fact shall be considered as such.

Mason County Medical Ass'n v. Knebel, 563 F.2d 256, 261 (6th Cir.1977); *Bolthouse v. Continental Wingate Co., Inc.*, 656 F.Supp. 620, 625 (W.D.Mich.1987). These four criteria "do not constitute a 'rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief, [rather] the four considerations ... are factors to be balanced, not prerequisites that must be met.'" *Id.* (quoting *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985)).

F. *Discussion.*

a. *Plaintiffs' likelihood of success on the merits.* The plaintiffs have shown a strong likelihood that they will succeed on the merits of their federal claim. The evidence shows that the plaintiffs made both written and oral bona fide full price offers to purchase the home located at 429 Pearl Street. Both of these offers were communicated to Mr. Bowman, but neither was accepted by Mr. Bowman. The evidence further shows that religious beliefs were a substantial factor in Mr. Bowman's refusal to sell to the Chapps; he raised the subject of religion during a discussion with Mr. Chapp concerning the sale. He was inquisitive about Mr. Chapp's religion, and admonished him that "good Christians" should not go into debt to purchase property. He indicated in no uncertain terms that money was not the sticking point holding up the sale. Finally, he later admitted that he had (at least "officially") taken the property off the market in order to avoid the appearance of discrimination. The implication is clear: that the Chapps were denied purchase of the property because Mr. Bowman and his wife were concerned that the Chapps did not share their religious beliefs.

b. *Irreparable Injury.* When housing discrimination is shown, "it is reasonable to presume that irreparable injury flows from the discrimination." *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir.1984); *Bolthouse*, 656 F.Supp. at 628–29. The Court finds this presumption

to be consistent with the fair housing law, which specifically authorizes temporary injunctive relief upon a showing that a violation has or is about to occur. 42 U.S.C. § 3613(c)(1).

However, even absent such a presumption, the Court finds that the plaintiffs have demonstrated that they will suffer irreparable injury. If the defendants sell or otherwise dispose of the property to an innocent purchaser in the absence of a preliminary injunction, such a sale could not be undone. The plaintiffs' money damages, if any, will be difficult to prove, inasmuch as they sought to pay the full appraised value of the property. Instead, it appears that their primary loss will be the opportunity to make the 429 Pearl Street house their residence. Under the circumstances, the Court concludes that irreparable injury to the Chapps will result in the absence of preliminary injunctive relief.[6]

c. *Substantial harm to third parties.* Presently, two tenants occupy the 429 Pearl Street house. No testimony was presented as to whether these tenants (who were present on the property during the events at issue in this case) are under lease; however, the Court finds that they are not, inasmuch as they remain on the premises rent-free, according to Mr. Bowman. These tenants will not be affected by retention of the status quo. Furthermore, there is no indication that any other parties will be harmed should preliminary injunctive relief issue.

d. *The public interest.* 42 U.S.C. § 3601 briefly states the policy of the United States "to provide, within constitutional limitations, for fair housing throughout the United States." Thus, Congress has determined that it is in the public interest to prevent discrimination in housing practices. The preliminary injunctive relief sought serves that interest.

## CONCLUSION

Based upon the foregoing, the Court finds that preliminary injunctive relief is warranted.

---

**6.** The Court further finds that the danger of irreparable injury is sufficiently immediate to justify preliminary injunctive relief; although Mr. Bowman testified that he has taken the property "off the market," Ms. Carey's testimony indicates that Mr. Bowman still intends to sell the property, in spite of the fact that the property is occupied by rent-free tenants.

IT IS THEREFORE ORDERED as follows:

1. The defendants, their successors, agents, assignees, principals, assignors, employees, representatives, or any other persons acting in concert with them, are restrained from selling, leasing encumbering, transferring or otherwise disposing of the property located at 429 Pearl Street, Boyne City, Michigan, to any person other than the plaintiffs until further order of this Court.

2. Service of this Order shall be made by the clerk of court by mailing a copy thereof to the attorneys of record, and by mailing a copy thereof to defendants Kowalske and Jane Doe, a.k.a. Patti Hamilton, on behalf of whom no appearance by an attorney has been filed.

IT IS SO ORDERED.