**UNITED STATES of America, Plaintiff,**

v.

**EDWARD ROSE & SONS, et al, Defendants.**

**No. 02–73518.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 21, 2003.

---

Pamela J. Thompson, Judith E. Levy, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

Frederick M. Baker, Jr., Honigman, Miller, Lansing MI, Robert M. Jackson, Honigman, Miller, Bingham Farms, MI, Andrew Sandler, Skadden, Arps, Washington, DC, Patrick T. Duerr, Honigman, Miller, Detroit, MI, Kevin J. Gleeson, Sheri B. Cataldo, Sullivan, Ward, Southfield, MI, for Defendants.

*ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; DENYING DEFENDANTS' MOTION TO TRANSFER; AND, GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT*

ROBERTS, District Judge.

## I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Leave to File an Amended Complaint and for Entry of a Preliminary Injunction, and Defendant's Motion to Transfer. For the reasons stated below, the Court **GRANTS** Plaintiff's Motion for Leave to File an Amended Complaint, **GRANTS** in part and **DENIES** in part Plaintiff's Motion for Preliminary Injunction, and **DENIES** Defendants' Motion to Transfer.

## II. BACKGROUND

Plaintiff, the United States of America (the "Government"), has filed this action alleging that Defendants' construction of 14 apartment complexes in Michigan, Wisconsin, Ohio and Illinois violates the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1968(FHA), 42 U.S.C. §§ 3601–3619, and Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181–12189.[1] Plaintiff specifically alleges that the "primary entrances"

---

1. The named Defendants that are alleged to be engaged in the development, construction and operation of the complexes at issue are: Edward Rose & Sons; Edward Rose & Sons, Inc; Edward Rose & Associates, LLC; Edward Rose & Associates, Inc; Edward Rose Development Co., LLC; Edward Rose Realty, Inc; Edward Rose Properties, Inc; Occidental Development Co, LLC, and; Occidental Development, LTD (collectively, "the Rose Defendants"). The Defendants alleged to have been involved in the development of only certain complexes are Huron Development, LP and Green Ridge, LP. The Defendants alleged to have provided architectural and building design are: Dorchen/Martin Associates, Inc; Eckert/Wordell Architects, PC; James R. Saule, Architect, and; Gerald Peterson, Architect.

of certain apartment units in the complexes are constructed or will be constructed in a manner that renders those units inaccessible to persons with disabilities, all in violation of the requirements of 42 U.S.C. § 3604(f)(3)(C).

The units at issue are ground floor apartments which have two exterior entrances—a front door and a rear patio door. The front entrance to these units is typically situated in proximity to the parking lot (approximately 40 feet). In order to enter these units, one must descend a half flight of stairs. The patio entrance does not require the occupant or guest to traverse any steps. However, Plaintiff argues that this entrance is located anywhere from 100–430 feet from the nearest parking space.

Plaintiff contends that the placement of steps at the front door, the "primary entrance," renders the front entrance inaccessible [2] under the FHA to those in wheelchairs or who otherwise have mobility challenges. But, Defendants assert that the rear patio entrance can be utilized as the "primary entrance" and, because the patio entrance is accessible as required by the FHA, it satisfies their obligation to provide *one* accessible entrance.

Plaintiff asks the Court to: 1) declare that the FHA requires that dwellings that are subject to the accessibility requirements of the FHA, i.e. "covered dwellings," have an accessible "primary entrance" and that the design contemplated by the Rose Defendants violates the Act; and, 2) enjoin the Rose Defendants from taking any further action to secure buildings, occupancy or other permits for, or to otherwise construct or occupy, buildings 6–15 at Lake Pointe Apartments in Batavia, Ohio; or buildings 7–13 at Westlake Apartments in Belleville, Michigan which have inaccessible primary entrances, until such time as the Court can determine an appropriate remedy or the parties can conduct discovery and come to an agreement regarding an alternative design and/or modifications which would bring the units into compliance with the FHA.

Plaintiff further seeks to enjoin Defendants entirely from occupying (leasing) the covered and non-covered units [3] in buildings 4 and 5 at Lake Pointe and 11–13 at Westlake. Plaintiff contends that enjoining occupancy entirely would enable Plaintiff to have its experts examine the buildings and explore possible modifications in the least disruptive way.

In addition to its request for a preliminary injunction, Plaintiff seeks to add an additional architect defendant, Alexander V. Bogaerts & Associates, PC, and nine more complexes which allegedly fail to comply with the FHA in the same manner as those listed in Plaintiff's original complaint.

Prior to the filing of this action, Plaintiff filed an action in the United States District

---

**2.** " 'Accessible', when used with respect to the public and common use areas of a building containing covered multifamily dwellings, means that the public or common use areas of the building can be approached, entered, and used by individuals with physical handicaps. The phrase 'readily accessible to and usable by' is synonymous with accessible." 24 C.F.R. 100.201

**3.** "Covered" dwellings, in this case, are all ground floor units, in buildings consisting of 4 or more units. 42 U.S.C. § 3604(f)(7)(B). In buildings with 4 or more units and one or more elevators, *all* dwelling units in the building (ground floor and above) are "covered" by FHA requirements. 42 U.S.C. § 3604(f)(7)(A). However, because none of the buildings at issue in this case has elevators, dwelling units above the ground floor are not required to comply with FHA accessibility requirements. The Court will refer to these dwelling units as "non-covered" dwellings.

Court for the Northern District of Indiana alleging violations of the FHA by two Rose companies at four properties.[4] Plaintiff later amended that complaint to add four additional Rose companies, three architectural firms and ten allegedly non-compliant properties.

There is no question that this Court has both subject matter and personal jurisdiction over all Defendants in this case. However, because of the convenience that would result from litigating this case in one forum, Defendants request that the Court transfer this action to the Northern District of Indiana, pursuant to 28 U.S.C. § 1404(a).

Plaintiff objects to transfer, asserting that the Northern District of Indiana does not have personal jurisdiction over two of the architect Defendants, Saule and Peterson, because neither has done business in Indiana, nor were they involved in the design of the complexes at issue in that action. Saule and Peterson, however, have offered to consent to jurisdiction in Indiana. Plaintiff has rejected their offer. Furthermore, Defendants provided affidavits from Saule and Peterson in which each attests that his work on the complexes at issue was done entirely within the scope of employment with SSOE, Inc, and that neither contracted directly with any of the Rose companies. Both Saule and Peterson also assert that SSOE regularly does business in Indiana. However, neither indicates that he has direct ties that would subject him to personal jurisdiction in Indiana.

Plaintiff also asserts that there is no evidence that several other Defendants named in this suit were involved in developing any of the properties at issue in the Indiana action. For that reason, Plaintiff contends that those Defendants are not likely subject to personal jurisdiction in Indiana. Namely, Plaintiff is referring to Edward Rose & Sons (partnership); Edward Rose Realty, Inc; Edward Rose Properties, Inc; Occidental Development, LLC; Huron Development, LP; and Green Ridge, LP. Defendants dispute Plaintiff's claim with regard to 5 of these Defendants because they are Rose entities and, in the Indiana action, Plaintiff seeks injunctive relief from other Rose entities and "all other person [sic] in active concert or participation with any of them." Per Defendants, they have never claimed that the Indiana Court lacks jurisdiction over any Rose entity.

Alternatively, Defendants ask the Court to sever the claims against Saule and Peterson and transfer the balance of claims and Defendants to Indiana. Plaintiff objects to severance as well, on the ground that the claims against Saule and Peterson are inextricably bound with the claims against the Rose Defendants.

## III. ANALYSIS

### A. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

In the Sixth Circuit, when determining whether to issue a preliminary injunction, the court must typically consider four factors:

(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and

---

**4.** Aside from the Rose entities, only 5 other of the Defendants named here are also named in the Indiana action.

(4) whether the public interest is advanced by the issuance of the injunction.

*Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir.1994).

Considering these factors, the Court is to balance each factor against the other to arrive at its ultimate determination. *Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir.2000).

### i.  Likelihood of Success

Congress amended the FHA in 1988 to prohibit discrimination based on disability. 42 U.S.C. § 3604(f) specifically states that it is unlawful:

(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

(A) that buyer or renter....

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

(A) that person ....

The FHA also requires that ground floor units in multifamily dwellings, built for first occupancy after March 13, 1991, meet minimum design and construction requirements. Under 42 U.S.C. § 3604(f)(3)(C), it is unlawful to fail to design and construct covered dwellings such that:

(i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;

(ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

(iii) all premises within such dwellings contain the following features of adaptive design:

(I) an accessible route into and through the dwelling;

(II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

(III) reinforcements in bathroom walls to allow later installation of grab bars; and

(IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

The FHA expressly authorizes a court to award injunctive relief to remedy violations of the Act:

(a) Pattern or practice cases

Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, the Attorney General may commence a civil action in any appropriate United States district court.

\*    \*    \*    \*    \*    \*

(1) In a civil action under subsection (a) or (b) of this section, the court—

(A) may award such preventive relief, including a permanent or temporary injunction, restraining order, or other order against the person responsible for a violation of this subchapter as is necessary to assure the full enjoyment of the rights granted by this subchapter.

42 U.S.C. § 3614(a) and (d)(1)(A).

In this case, Plaintiff contends that the front entrance falls within the definition of a "public and common use area" and, therefore, must be accessible as required

by § 3604(f)(3)(C)(i). The fact that the rear entrance may meet accessibility requirements, says Plaintiff, does not relieve Defendants of the obligation to make a primary entrance in a public and common use area accessible as well.[5]

Defendants disagree with Plaintiff's interpretation of the statute. Presumably because the front entrance is an exterior entrance (as opposed to an entrance that opens from an interior hallway or foyer) and is not utilized by other tenants, Defendants assert that it cannot be considered part of the "public and common use areas." Therefore, says Defendants, (C)(i) does not apply. Rather, Defendants contend that, per (C)(iii)(I), they are only required to provide "an" accessible entrance. The rear patio entrance, says Defendants, meets this requirement.

Plaintiff, during oral argument, indicated that it is not asserting that all entrances must be accessible or that only front facing entrances or those closest to parking can be the primary entrance. Rather, Plaintiff argued that any entrance can be the primary one so long as it is on an accessible route[6], is designed for public and common use and can reasonably be expected to be utilized as such. Plaintiff asserts that the patio entrances, as currently designed, cannot reasonably be expected to be utilized as primary entrances.

The Court has considered both the express statutory language and the Housing and Urban Development's (HUD) interpretation of such language. In so doing,

the Court is persuaded that Plaintiff's interpretation is reasonable. Accordingly, that interpretation is to be given deference.

HUD is "the federal agency primarily charged with the implementation and administration" of the FHA. *Meyer v. Holley,* — U.S. —, 123 S.Ct. 824, 830, 154 L.Ed.2d 753 (2003). As such, Congress directed HUD to provide technical assistance in the implementation of the requirements of 42 U.S.C. § 3604(f)(3)(C). 42 U.S.C. § 3604(f)(5)(C). HUD, thereafter, issued Fair Housing Accessibility Guidelines (the "Guidelines") that are set forth at Vol. 56, No. 44 Fed.Reg. at 9472–9515 (March 6, 1991).

The Guidelines are not mandatory. 56 Fed.Reg. at 9472. "The purpose of the Guidelines is to describe minimum standards of compliance with the specific accessibility requirements of the Act." *Id* at 9476. While failure to meet the requirements as interpreted in the Guidelines does not constitute unlawful discrimination, the Guidelines are "intended to provide a safe harbor for compliance with the accessibility requirements of the Fair Housing Amendments Act .... Builders and developers may choose to depart from the Guidelines, and seek alternate ways to demonstrate that they have met the requirements of the Fair Housing Act." *Id* at 9473. The Act itself provides one such alternative, the American National Standard for buildings and facilities providing accessibility and usability for physically

---

**5.** Because Plaintiff's experts have yet to inspect the units, Plaintiff does not concede that the rear entrances in these units comply with the FHA. However, for purposes of this motion, the Court will presume that the rear entrances meet FHA requirements.

**6.** HUD regulations define accessible route as: "[A] continuous unobstructed path connecting accessible elements and spaces in a building

or within a site that can be negotiated by a person with a severe disability using a wheelchair and that is also safe for and usable by people with other disabilities. Interior accessible routes may include corridors, floors, ramps, elevators and lifts. Exterior accessible routes may include parking access aisles, curb ramps, walks, ramps and lifts." 24 C.F.R. 100.201.

handicapped people (commonly cited as "ANSI A117.1"). Compliance with ANSI will also satisfy the requirements of § 3604(f)(3)(C)(iii). 42 U.S.C. § 3604(f)(4).

The FHA does not answer the question posed by this litigation: Is a front entrance part of the "public and common use area" and, therefore, required to be accessible regardless of whether there is another accessible entrance?[7] In fact, the FHA does not explicitly distinguish between front, rear or other entrances.

■ The language of the FHA is to be read as "broad and inclusive." *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 208, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). However, where a statute is silent or ambiguous as to a specific issue, a court must consider the interpretation of an administrative agency that has been given such authority. See *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Trafficante*, 409 U.S. at 210, 93 S.Ct. 364. A court must defer to an administrative agency's interpretation as long as it is a permissible construction of the statute:

> "The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or mani-

festly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

*Chevron*, 467 U.S. at 843–844, 104 S.Ct. 2778 (footnote omitted). The *Chevron* Court further stated that it has been long recognized that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Id.* at 844, 104 S.Ct. 2778. Recently, in *Meyer v. Holley, supra*, the United States Supreme Court noted that HUD's reasonable interpretations of the FHA is entitled to deference. 123 S.Ct. at 830. In considering HUD's interpretation of the statute before it, the Court cited extensively from HUD's commentary in the Federal Register, as well as the Code of Federal Regulations. *Id.*

With *Chevron, Trafficante* and *Meyer* in mind, the Court has reviewed HUD's comments in: proposed regulations, the 1998 Fair Housing Act Design Manual (Design Manual) and the final regulations codified at 24 C.F.R. 100.201–205. In the preamble to the proposed regulations regarding entrances, HUD stated that "[h]andicapped persons should be able to enter a newly constructed building through an entrance used by persons who do not have handicaps." 53 Fed.Reg. 44992, 45004 (November 7, 1988).

In the FHA Design Manual, HUD includes an illustration of acceptable and unacceptable accessible routes to the entrance at the front of a building, which it refers to as the "primary entrance." FHA

---

**7.** The Court disagrees with Defendants' assertion that the portions of the legislative history

illuminated by Defendants' counsel during oral argument address this issue.

Design Manual 1.28 (1998). In the illustration, the building is constructed in much the same manner as the buildings at issue in this case. For example, nearest the parking lot, there is a front entrance below grade level that is only accessible by descending a flight of stairs, and a rear entrance via the patio door that has an accessible route but is situated farther from the parking lot. *Id.* HUD stated that this construction is unacceptable as it only provides "back door" access to a secondary entrance. *Id.* A proposed solution was to provide parking and an accessible route to the rear entrance, thereby effectively making the rear entrance the primary entrance. *Id.*

HUD further stated in the Design Manual that, regardless of whether the entrance into the unit opens from the interior or exterior, primary entry doors are part of the public and common use spaces and, therefore, must be accessible:

> The exterior of the primary entry door of covered dwelling units is part of public and common use spaces, therefore, it must be on an accessible route and be accessible, i.e. meet the ANSI requirements of 4.13 Doors. This is true both of entry doors opening off interior corridors internal to a building containing multiple dwelling units, and of separate exterior ground floor dwelling unit entrances.

FHA Design Manual 3.10.

The Court further notes HUD's definition of "public and common use areas," as set forth in its regulations, along with the ANSI's definition of "space." HUD defines common use areas as:

> [R]ooms, **spaces** or elements inside or outside of a building that are made **available for the use of residents of a building or the guests thereof.** These areas include hallways, lounges, lobbies, laundry rooms, refuse rooms, mail rooms, recreational areas and passageways among and between buildings.

24 C.F.R. 100.201 (emphasis added). Public use areas are defined as:

> [I]nterior or exterior rooms **or spaces** of a building that are made available to the general public.

*Id* (emphasis added). HUD regulations also state that "[a] public or common use area that complies with the appropriate requirements of ANSI A117.1–1986 or a comparable standard is 'accessible.'"

Lastly, in section 3.5 of ANSI A117.1–1986, "space" is defined as "[a] definable area (for example, toilet room, hall, assembly area, entrance, storage room alcove, courtyard or lobby)." (emphasis added). In the Guidelines, in response to commentary regarding maneuvering space at doors, HUD states that "approaches to . . . the exterior side of the entrance door to an individual dwelling unit would be considered part of the public spaces. . . ." 56 Fed Reg at 9487–9488.

■ Based upon the foregoing, the Court finds that HUD interprets the Act such that a primary entrance is part of the public or common use areas, regardless of whether it opens from the interior or exterior. If this is true, then, it must comply with the FHA accessibility requirements, even if there is a secondary entrance that is adequately accessible. A "primary entrance," it seems, is one that is on an accessible route and is most likely to be used as such, particularly when it is most convenient to parking. The Court finds that HUD's interpretation is a reasonable, permissible construction of the FHA and is consistent with the letter and spirit of the FHA.

Based upon the HUD comments and the plain language of the statute, the Court disagrees with Defendants' assertion that compliance with (C)(iii)(I) is all that is

required. In (C)(i) and (iii), the statute seems to make an express distinction between the requirements for the public and common use areas and those areas "within" a dwelling. The statute clearly provides that any space that qualifies as a public and common use area must be accessible under (C)(i). The statute, however, expressly avoids imposing this requirement on the interior areas of dwellings, which would not typically qualify as part of the public and common use areas. At (C)(iii), the statute states that "all premises *within*" a dwelling must have one accessible route. (emphasis added). The distinction is further evidenced by the fact that the subsections to (C)(iii) address only interior compliance requirements, i.e. the placement of light switches, bathroom reinforcements, usable kitchens and bathrooms, etc, and have little to do with what is going on outside of the premises that are contained within the multifamily dwelling.

Based upon the foregoing, the Court finds that Plaintiff has reasonably concluded that constructing an accessible route in compliance with (C)(iii) does not relieve Defendants of the obligation to comply with (C)(i) with respect to primary entrances in multifamily dwellings, if such entrances qualify as "public and common use portions of such dwellings." Plaintiff has adequately demonstrated a likelihood of success on the merits.

### ii. Irreparable Harm

■ When a plaintiff seeks an injunction to prevent the violation of a federal statute that specifically provides for in-

junctive relief, a showing of irreparable harm is not required. *Illinois Bell Telephone Co. v. Illinois Commerce Commission,* 740 F.2d 566, 571 (7th Cir.1984); *Bradford v. Securities and Exchange Commission,* 278 F.2d 566, 567 (9th Cir. 1960); *Wisconsin v. Stockbridge–Munsee Community,* 67 F.Supp.2d 990, 993–994 (E.D.Wi.1999); *U.S. v. City of Painesville, Ohio,* 644 F.2d 1186, 1194 (6th Cir.1981), *cert. den.,* 454 U.S. 894, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981).[8] Quoting the Ninth Circuit, the *Wisconsin* court stated, "[b]ecause Congress has seen fit to act· in a given area by enacting a statute, irreparable injury must be presumed in a statutory enforcement action." 67 F.Supp.2d at 994, quoting *U.S. v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 176 (9th Cir.1987).

This Court has stated that, with regard to alleged Securities and Exchange Commission (SEC) violations, a plaintiff need only show that there has been a violation of the SEC and that future violations are reasonably likely to occur. *Securities and Exchange Commission v. Great Lakes Equities Co.,* 1990 WL 260587, \*24 (E.D.Mich.1990), *aff'd,* 12 F.3d 214 (6th Cir.1993). A court must balance the following factors to determine the likelihood of future violations:

(1) the egregiousness of the violations,

(2) the isolated or repeated nature of the violations,

(3) the degree of scienter involved,

(4) the sincerity of the defendant's assurances, if any, against future violations,

---

**8.** The Court notes that the Western District of Michigan in *Chapp v. Bowman,* 750 F.Supp. 274, 277 (W.D.Mich.1990) acknowledged the presumption when housing discrimination has been shown. In so doing, the Court relied upon an Eleventh Circuit decision, *Gresham v. Windrush Partners, Ltd.,* 730 F.2d

1417, 1423 (11th Cir.1984), *cert. den.,* 469 U.S. 882, 105 S.Ct. 249, 83 L.Ed.2d 187 (1984), in which the court stated that the presumption is rebuttable. The *Chapp* Court, however, did not expressly adopt this position.

(5) the defendant's recognition of the wrongful nature of his conduct,

(6) the likelihood that the defendant's occupation will present opportunities (or lack thereof) for future violations, and

(7) the defendant's age and health.

*Id.* No one factor is determinative. *Id.*

■ Because the FHA expressly provides for injunctive relief at 42 U.S.C. § 3614(a) and (d)(1)(A), the Court finds that Plaintiff is entitled to the presumption of irreparable harm if Defendants continue to construct units which do not have accessible primary entrances to ground floor units that are covered by the FHA.[9] As stated above, the Court finds that Plaintiff has provided sufficient evidence that there has been a violation of the Act. The Court further finds that a balance of the factors set forth in *Great Lakes* indicates that future violations are likely to occur.

With regard to the first factor, Defendants' alleged actions effectively deprive disabled individuals of accessible housing. This conduct is quite egregious, and is being done at a time when there is great sensitivity to the fact that people with disabilities are the only protected class of people who can be denied access to housing solely because of the manner of the design. And, Defendants actions do not appear to be isolated. Plaintiff has identified 11 complexes that are alleged to be in violation of the FHA.[10] Therefore, the second factor also weighs against Defendants. Factors four, five and six also weigh

against Defendants because they have not agreed to voluntarily bring the complexes into compliance; they appear to be comfortable in providing only "back door" access to people with disabilities; and, as active members of the construction industry, it is very likely that they will have other opportunities to commit future violations.[11]

However, with respect to those units on the second and third stories that are not required to comply with the FHA and are not even the subject of Plaintiff's Complaint, the Court finds that Plaintiff is not entitled to the presumption. Plaintiff has not even established that the Court has the authority to enjoin Defendants' use of the non-covered units.

### iii. Substantial Harm to Third Parties

Defendants argue that an injunction halting construction and precluding them from leasing completed units pending a final resolution will impose a hefty financial burden on them. Defendants further point out the potential far-reaching effects of this Court's ruling throughout the construction and related industries with regard to existing buildings and those to be constructed, that bear the same or a similar design.

Defendants' point is well taken. The Court is not oblivious to the potential financial repercussions of its ruling. However, Defendants did not cite and the Court is unaware of any case in which a

---

**9.** To the extent that *Chapp* allows Defendants to rebut the presumption, the Court finds that Defendants have not set forth the requisite evidence to do so. Indeed, Defendants have not offered any evidence that the injury suffered by those disabled individuals who may desire to occupy the units at issue during the pendency of this matter, is not irreparable, i.e. that those individuals will have an adequate remedy at law. *See Gresham,* 730 F.2d

at 1423 (The presumption may be rebutted "by evidence that any injury that may occur is not irreparable.").

**10.** The 11 complexes the Court refers to are the 2 identified in Plaintiff's Complaint and the 9 additional complexes listed in Plaintiff's proposed Amended Complaint.

**11.** Factors three and seven do not apply here.

Court has held that the potential financial burden of correcting unlawful discrimination outweighs the harm caused by allowing a party to actively engage in acts that Congress has identified as wrongful and injurious to an entire class of people. This Court is unwilling to make such a finding here. Absent other precedent, the Court looks to the legislative intent of the FHA. By enacting the statute and the provisions at issue here, Congress has indicated that obliterating discrimination against disabled individuals at all levels in housing is a priority. Had Congress wanted to limit the Court's authority when the potential financial burden would be great, it could have expressly done so. It did not. Accordingly, the Court finds, as to the covered units only, that the balance of harms weighs in favor of Plaintiff. For the reasons previously stated, the Court finds that the balance of harms weighs against Plaintiff for non-covered units.

### iv. Public Interest

Michigan courts have found that, where there has been a showing of housing discrimination, preliminary injunctive relief serves the public interest by carrying out the stated policy of the United States in 42 U.S.C. § 3601 "to provide, within constitutional limitations, for fair housing throughout the United States." *Chapp*, 750 F.Supp. at 277. The Court agrees and finds that this element is satisfied.

### B. DEFENDANTS' MOTION TO TRANSFER

### 1. Transfer of Entire Case

■ 28 U.S.C. § 1404(a) states:

For the convenience of parties and witnesses, in the interest of justice, a dis-

trict court may transfer any civil action to any other district or division where it might have been brought.

It is within the Court's discretion to transfer an action under 28 U.S.C. § 1404(a) in order to prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Grand Kensington, LLC v. Burger King Corp.*, 81 F.Supp.2d 834, 836 (E.D.Mich.2000). However, a court should defer to a plaintiff's choice of venue and a defendant moving for transfer must overcome the presumption that plaintiff has chosen the proper forum. *Id.*

■ The threshold question in a decision to transfer an action to another district is whether the case "could have been brought" originally in the transferee district. *Roth v. Bank of Commonwealth*, Fed. Sec. L. Rep. (CCH) ¶ 96716, 1978 WL 1133, *1 (E.D.Mich.1978). An action could have been brought in the transferee district if 1) the transferee court has subject matter jurisdiction; 2) venue is proper there; and 3) service of process can be made on the defendants. *Roth*, 1978 WL 1133, at *1.

Relying upon *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). Plaintiff asserts that venue is not proper in the proposed transferee district, the Northern District of Indiana, because there is no evidence that either Saule or Peterson are licensed to do business in Indiana or that either has done business there.[12] Plaintiff also states that it has no evidence that six other Defendants are subject to jurisdiction in Indiana.

In *Hoffman*, the defendants sought a transfer to a district that did not have

---

**12.** Defendants assert in their brief that Saule was licensed in Indiana until 2002. However, Defendants did not provide any supporting documentation or other evidence and they do not claim that Saule has done business in Indiana.

venue by agreeing to waive all objections to jurisdiction. 363 U.S. at 337 n. 2, 80 S.Ct. 1084. The Court, however, rejected defendants' reasoning, holding that the express language of the statute prohibits a transfer unless the action could have been brought in the transferee district initially. *Id.* at 342–343, 80 S.Ct. 1084. Quoting the Seventh Circuit's holding with favor, the Court stated:

> If, when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where (the action) might have been brought.' If he does not have that right, independently of the wishes of defendant, it is not a district 'where it might have been brought,' and it is immaterial that the defendant subsequently (makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum).

*Id.* at 344, 80 S.Ct. 1084. Therefore, argues Plaintiff, because this action could not have been brought in the Northern District of Indiana, Defendants' motion must be denied.

■ Without distinguishing or even mentioning the holding in *Hoffman,* Defendants assert that venue is not an issue because Saule and Peterson are willing to consent to Indiana jurisdiction. Furthermore, Defendants argue that Plaintiff has artificially created a jurisdictional issue by naming Saule and Peterson rather than their employer, SSOE, which does business in Indiana. Defendants, however, do not directly assert or cite any authority for their implied claim that naming Saule and Peterson was improper.[13]

With regard to the six other Defendants whose ties to Indiana are questioned by Plaintiff, Defendants state, but offer no proof, that they are subject to jurisdiction there. Defendants' claim that five of the six Defendants have already been "named" in the Indiana action, by virtue of a catch-all phrase in Plaintiff's request for injunctive relief to include the named Defendants and "all other person [sic] in active concert or participation with any of them," completely lacks merit.

Lastly, Defendants point out the obvious benefits of consolidating the Michigan and Indiana cases, including convenience, efficiency and consistency in the rulings.

The Court is mindful that consolidating the actions would be the most efficient and desirable option. However, Defendants have failed to meet their threshold burden of proving that this action could have been brought against all of the named Defendants in Indiana, short of their agreement to consent to jurisdiction. Therefore, *Hoffman* is controlling and Defendants' motion must be denied.

---

**13.** While there is a split of authority on the issue, several courts have held that architects and contractors who were only involved in either the design or construction of noncompliant buildings can be held liable under § 3604(f)(3)(C). See *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.,* 3 F.Supp.2d 661, 665 (D.Md.1998)("When a group of entities enters into the design and construction of a covered dwelling, all participants in *the process as a whole* are bound to follow the FHAA."); *U.S. v. Hartz Construction Co.,* 1998 WL 42265 (ND Ill 1998); *Montana Fair Housing v. American Capital Devel-op.,* 81 F.Supp.2d 1057, 1060, 1068 (D.Mont.1999)(architect and company that he was employed with named); *Johanson v. Huizenga Holdings, Inc.,* 963 F.Supp. 1175 (S.D.Fla.1997). But compare *Paralyzed Veterans of America v. Ellerbe Becket Architects & Engineers, PC,* 945 F.Supp. 1 (DC 1996), *aff'd,* 117 F.3d 579 (1997), *cert. den.,* 523 U.S. 1003, 118 S.Ct. 1184, 140 L.Ed.2d 315 (1998)(architects not liable under the ADA unless they were involved in design and construction); *Lonberg v. Sanborn Theaters, Inc.,* 259 F.3d 1029 (9th Cir.2001), *as amended,* 271 F.3d 953 (9th Cir.2001).

### 2. Severance of Some Defendants

■ The Court is also not persuaded, at this time, that severance of the claims against Saule and Peterson would be proper. Like motions to transfer under § 1404(a), in deciding whether to sever claims, the Court must consider the convenience of the parties and witnesses and the interests of justice. *Roth*, 1978 WL 1133, at *5. The burden is on the movant to make a "clear showing that the balance of convenience and the interests of justice require" severance. *Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F.Supp. 117, 121 (S.D.Tex.1971).

In *Roth v Bank of Commonwealth, supra*, the Court found that the claims against two defendants were severable because their alleged activities were distinct and only incidental to the claims that made out the core of plaintiff's case. 1978 WL 1133, at *6. The two defendants could be tried without the probability of trying the entire case twice. *Id.*

■ Here, Saule and Peterson are essentially alleged to have been involved in a cooperative effort with developers, contractors and others in the unlawful design and construction of the complexes at issue. Under these circumstances, Defendants have failed to clearly establish how the claims against Saule and Peterson could be litigated without trying the entire case against all of those alleged to have been involved. It seems unlikely, on these facts, that either party could effectively try the claims against Saule and Peterson in a vacuum. Furthermore, as stated above, there are six other Defendants who may not be subject to jurisdiction in Indiana, whose claims would also have to be severed. Defendants have not made a showing as to how or if the claims against those Defendants could be tried independent of those Defendants which may be transferred.

Based upon the foregoing, the Court finds that Defendants have failed to satisfy their burden to prove that the balance of convenience and the interests of justice require severance.

### C. PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Fed.R.Civ.P. 15(a) states that "leave [to amend] shall be freely given when justice so requires." Leave should not be denied unless there is evidence of "undue delay, bad faith, undue prejudice to the non-movant, or futility." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 519 (6th Cir.2001).

Here, Defendants have not stated an objection to Plaintiff's motion to amend and the Court does not find that Plaintiff's request is precluded by undue delay, bad faith, undue prejudice to the non-movant, or futility. Therefore, Plaintiff's motion to amend to add architect Alexander V. Bogaerts & Associates, PC, and an additional nine complexes is granted.

### IV. CONCLUSION

The Court **DENIES** Defendants' Motion to Transfer or to, alternatively, sever the claims of James R. Saule and Gerald Peterson; **GRANTS** Plaintiff's Motion for Leave to File an Amended Complaint, and **GRANTS** in part and **DENIES** in part Plaintiff's Motion for Preliminary Injunction.

Until further Order of the Court;

**IT IS HEREBY ORDERED** that Defendants shall halt all construction activity on dwellings that are subject to the accessibility requirements of the Fair Housing Act, 42 U.S.C. § 3601, *et seq*, i.e. "covered dwellings," in buildings 4 through 15 at the Lake Pointe Apartments in Batavia, Ohio and buildings 7 through 13 at the Westlake Apartments in Belleville, Michigan. For

purposes of this Order, the Court defines "construction" to include all efforts to obtain building and/or occupancy permits on those sites for which permits have not already been issued.

**IT IS FURTHER ORDERED** that, where construction has been completed, Defendants shall refrain from occupying, via lease/rental agreements or otherwise, covered dwellings that are presently unoccupied and/or for which lease/rental agreements have not been entered into, in buildings 4 through 15 at the Lake Pointe Apartments in Batavia, Ohio and buildings 7 through 13 at the Westlake Apartments in Belleville, Michigan.

**IT IS SO ORDERED.**