## MEYER *v.* HOLLEY ET AL.

No. 01–1120.   Argued December 3, 2002—Decided January 22, 2003

BREYER, J., delivered the opinion for a unanimous Court.

*Douglas G. Benedon* argued the cause for petitioner. With him on the briefs was *Gerald M. Serlin.*

*Robert G. Schwemm* argued the cause for respondents. With him on the brief were *Elizabeth Brancart, Christopher Brancart,* and *Greg Alexanian.*

*Malcolm L. Stewart* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Olson, Assistant Attorney General Boyd, Deputy Solicitor General Clement,* and *David K. Flynn.\**

JUSTICE BREYER delivered the opinion of the Court.

The Fair Housing Act forbids racial discrimination in respect to the sale or rental of a dwelling. 82 Stat. 81, 42 U. S. C. §§ 3604(b), 3605(a). The question before us is whether the Act imposes personal liability without fault upon an officer or owner of a residential real estate corporation for the unlawful activity of the *corporation's* employee or agent. We conclude that the Act imposes liability without fault upon the employer in accordance with traditional agency principles, *i. e.,* it normally imposes vicarious liability upon the corporation but not upon its officers or owners.

I

For purposes of this decision we simplify the background facts as follows: Respondents Emma Mary Ellen Holley and

---

*Briefs of *amici curiae* urging reversal were filed for the California Association of Realtors by *June Babiracki Barlow* and *Neil Kalin;* for the National Association of Home Builders by *Christopher G. Senior;* and for the National Association of Realtors by *Laurene K. Janik* and *Ralph W. Holmen.*

Briefs of *amici curiae* urging affirmance were filed for the International Association of Official Human Rights Agencies by *Bruce V. Spiva* and *Jessie K. Liu;* and for the National Fair Housing Alliance et al. by *John P. Relman, Meera Trehan,* and *Virginia A. Seitz.*

David Holley, an interracial couple, tried to buy a house in Twenty-Nine Palms, California. A real estate corporation, Triad, Inc., had listed the house for sale. Grove Crank, a Triad salesman, is alleged to have prevented the Holleys from obtaining the house—and for racially discriminatory reasons.

The Holleys brought a lawsuit in federal court against Crank and Triad. They claimed, among other things, that both were responsible for a fair housing law violation. The Holleys later filed a separate suit against David Meyer, the petitioner here. Meyer, they said, was Triad's president, Triad's sole shareholder, and Triad's licensed "officer/broker," see Cal. Code Regs., tit. 10, § 2740 (1996) (formerly Cal. Admin. Code, tit. 10, § 2740) (requiring that a corporation, in order to engage in acts for which a real estate license is required, designate one of its officers to act as the licensed broker); Cal. Bus. & Prof. Code Ann. §§ 10158, 10159, 10211 (West 1987). They claimed that Meyer was vicariously liable in one or more of these capacities for Crank's unlawful actions.

The District Court consolidated the two lawsuits. It dismissed all claims other than the Fair Housing Act claim on statute of limitations grounds. It dismissed the claims against Meyer in his capacity as officer of Triad because (1) it considered those claims as assertions of *vicarious* liability, and (2) it believed that the Fair Housing Act did not impose personal vicarious liability upon a corporate *officer*. The District Court stated that "any liability against Meyer as an officer of Triad would only attach to Triad," the corporation. App. 31. The court added that the Holleys had "not urged theories that could justify reaching Meyer individually." *Ibid.* It later went on to dismiss for similar reasons claims of vicarious liability against Meyer in his capacity as the "designated officer/broker" in respect to Triad's real estate license. *Id.,* at 52–55.

The District Court certified its judgment as final to permit the Holleys to appeal its vicarious liability determinations. See Fed. Rule Civ. Proc. 54(b). The Ninth Circuit reversed those determinations. 258 F. 3d 1127 (2001). The Court of Appeals recognized that "under general principles of tort law corporate shareholders and officers usually are not held vicariously liable for an employee's action," but, in its view, "the criteria for the Fair Housing Act" are "different." *Id.*, at 1129. That Act, it said, "specified" liability "for those who direct or control or have the right to direct or control the conduct of another"—even if they were not at all involved in the discrimination itself and even in the absence of any traditional agent/principal or employee/employer relationship, *id.*, at 1129, 1131. Meyer, in his capacity as Triad's sole owner, had "the authority to control the acts" of a Triad salesperson. *Id.*, at 1133. Meyer, in his capacity as Triad's officer, "did direct or control, or had the right to direct or control, the conduct" of a Triad salesperson. *Ibid.* And even if Meyer neither participated in nor authorized the discrimination in question, that "control" or "authority to control" is "enough . . . to hold Meyer personally liable." *Ibid.* The Ninth Circuit added that, for similar reasons, Meyer, in his capacity as Triad's license-related officer/broker, was vicariously liable for Crank's discriminatory activity. *Id.*, at 1134–1135.

Meyer sought certiorari. We granted his petition, 535 U. S. 1077 (2002), to review the Ninth Circuit's holding that the Fair Housing Act imposes principles of strict liability beyond those traditionally associated with agent/principal or employee/employer relationships. We agreed to decide whether "the criteria under the Fair Housing Act . . . are different, so that owners and officers of corporations" are automatically and "absolutely liable for an employee's or agent's violation of the Act"—even if they did not direct or authorize, and were otherwise not involved in, the unlawful discriminatory acts. Pet. for Cert. i.

## II

The Fair Housing Act itself focuses on prohibited acts. In relevant part the Act forbids "any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate," for example, because of "race." 42 U. S. C. § 3605(a). It adds that "[p]erson" includes, for example, individuals, corporations, partnerships, associations, labor unions, and other organizations. § 3602(d). It says nothing about vicarious liability.

Nonetheless, it is well established that the Act provides for vicarious liability. This Court has noted that an action brought for compensation by a victim of housing discrimination is, in effect, a tort action. See *Curtis* v. *Loether*, 415 U. S. 189, 195–196 (1974). And the Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules. *Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, 526 U. S. 687, 709 (1999) (listing this Court's precedents that interpret Rev. Stat. § 1979, 42 U. S. C. § 1983, in which Congress created "a species of tort liability," "in light of the background of tort liability" (internal quotation marks omitted)). Cf. *Astoria Fed. Sav. & Loan Assn.* v. *Solimino*, 501 U. S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law . . . principles"); *United States* v. *Texas*, 507 U. S. 529, 534 (1993) ("In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law").

It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment. *Burlington Industries, Inc.* v. *Ellerth*, 524 U. S. 742, 756 (1998) ("An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment"); *New Orleans, M., & C. R. Co.* v. *Hanning*, 15 Wall. 649, 657 (1873)

("The principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of"); see *Rosenthal & Co.* v. *Commodity Futures Trading Comm'n*, 802 F. 2d 963, 967 (CA7 1986) ("'respondeat superior' . . . is a doctrine about employers . . . and other principals"); Restatement (Second) of Agency § 219(1) (1957) (Restatement). And in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents. 3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1137, pp. 300–301 (rev. ed. 1991–1994); 10 *id.*, § 4877 (rev. ed. 1997–2001). The Restatement § 1 specifies that the relevant principal/agency relationship demands not only control (or the right to direct or control) but also "the manifestation of consent by one person to another that the other shall act *on his behalf* . . . , and consent by the other so to act." (Emphasis added.) A corporate employee typically acts on behalf of the corporation, not its owner or officer.

The Ninth Circuit held that the Fair Housing Act imposed more extensive vicarious liability—that the Act went well beyond traditional principles. The Court of Appeals held that the Act made corporate owners and officers liable for the unlawful acts of a corporate employee simply on the basis that the owner or officer controlled (or had the right to control) the actions of that employee. We do not agree with the Ninth Circuit that the Act extended traditional vicarious liability rules in this way.

For one thing, Congress said nothing in the statute or in the legislative history about extending vicarious liability in this manner. And Congress' silence, while permitting an inference that Congress intended to apply *ordinary* background tort principles, cannot show that it intended to apply an unusual modification of those rules.

Where Congress, in other civil rights statutes, has not expressed a contrary intent, the Court has drawn the inference that it intended ordinary rules to apply. See, *e. g., Burlington Industries, Inc., supra,* at 754–755 (deciding an employer's vicarious liability under Title VII based on traditional agency principles); *Meritor Savings Bank, FSB* v. *Vinson,* 477 U. S. 57, 72 (1986) ("Congress wanted courts to look to agency principles for guidance").

This Court has applied unusually strict rules only where Congress has specified that such was its intent. See, *e. g., United States* v. *Dotterweich,* 320 U. S. 277, 280–281 (1943) (Congress intended that a corporate officer or employee "standing in responsible relation" could be held liable in that capacity for a corporation's violations of the Federal Food, Drug, and Cosmetic Act of 1938, 52 Stat. 1040, 21 U. S. C. §§ 301–392); *United States* v. *Park,* 421 U. S. 658, 673 (1975) (discussing, with respect to the Federal Food, Drug, and Cosmetic Act, congressional intent to impose a duty on "responsible corporate agents"); *United States* v. *Wise,* 370 U. S. 405, 411–414 (1962) (discussing 38 Stat. 736, currently 15 U. S. C. § 24, which provides: "[W]henever a corporation shall violate any of the . . . antitrust laws, such violation shall be deemed to be also that of the individual directors, officers, or agents of such corporation who shall have authorized, ordered, or done any of the acts constituting in whole or in part such violation"); see also 46 U. S. C. § 12507(d) ("If a person, not an individual, is involved in a violation [relating to a vessel identification system], the president or chief executive of the person also is subject to any penalty provided under this section").

For another thing, the Department of Housing and Urban Development (HUD), the federal agency primarily charged with the implementation and administration of the statute, 42 U. S. C. § 3608, has specified that ordinary vicarious liability rules apply in this area. And we ordinarily defer to an administering agency's reasonable interpretation of a stat-

ute. *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U. S. 837, 842–845 (1984); *Skidmore* v. *Swift & Co.,* 323 U. S. 134, 140 (1944).

A HUD regulation applicable during the relevant time periods for this suit provided that analogous administrative complaints alleging Fair Housing Act violations may be filed

> "against any person who directs or controls, or has the right to direct or control, the conduct of another person with respect to any aspect of the sale . . . of dwellings . . . *if that other person, acting within the scope of his or her authority as employee or agent of the directing or controlling person* . . . has engaged . . . in a discriminatory housing practice."   24 CFR § 103.20(b) (1999) (repealed) (emphasis added).

See *Gladstone, Realtors* v. *Village of Bellwood,* 441 U. S. 91, 107 (1979) (treating administrative actions under 42 U. S. C. § 3610 and civil actions under § 3613 as alternative, but parallel, proceedings).

When it adopted the similar predecessor to this regulation (then codified at 24 CFR § 105.13, see 53 Fed. Reg. 24185 (1988)), HUD explained that it intended to permit a "respondent" (defined at 42 U. S. C. § 3602) to raise in an administrative proceeding any defense "that could be raised in court."   53 Fed. Reg., at 24185.   It added that the underscored phrase was designed to make clear that "a complaint may be filed against a directing or controlling person with respect to the discriminatory acts of another only if the other person was acting within the scope of his or her authority as *employee or agent of the directing or controlling person.*" *Ibid.* (emphasis added).   HUD also specified that, by adding the words "acting within the scope of his or her authority as employee or agent of the directing or controlling person," it disclaimed any "intent to impose absolute liability" on the basis of the mere right "to direct or control." *Ibid.;* see 54 Fed. Reg. 3232, 3261 (1989).

Finally, we have found no convincing argument in support of the Ninth Circuit's decision to apply nontraditional vicarious liability principles—a decision that respondents do not defend and in fact concede is incorrect. See Brief for Respondents 6, 10–11, 43 (conceding that traditional vicarious liability rules apply); Brief for United States as *Amicus Curiae* 8, 22. The Ninth Circuit rested that decision primarily upon the HUD regulation to which we have referred. The Ninth Circuit underscored the phrase *"'or has the right to direct or contro[l] the conduct of another person.'"* 258 F. 3d, at 1130. Its opinion did not explain, however, why the Ninth Circuit did not read these words as modified by the subsequent words that limited vicarious liability to actions taken as *"'employee or agent of the directing or controlling person.'"* *Id.*, at 1131. Taken as a whole, the regulation, in our view, says that ordinary, not unusual, rules of vicarious liability should apply.

The Ninth Circuit also referred to several cases decided in other Circuits. The actual holdings in those cases, however, do not support the kind of nontraditional vicarious liability that the Ninth Circuit applied. See *Chicago* v. *Matchmaker Real Estate Sales Center, Inc.*, 982 F. 2d 1086 (CA7 1992) (defendant corporation liable for the acts of *its* agents; shareholder directly, not vicariously, liable); *Walker* v. *Crigler*, 976 F. 2d 900 (CA4 1992) (owner of rental property liable for the discriminatory acts of agent, the property's manager); *Marr* v. *Rife*, 503 F. 2d 735 (CA6 1974) (real estate agency's owner liable for the discriminatory acts of his agency's salespersons, but without statement of whether agency was a corporation). Nor does the language of these cases provide a convincing rationale for the Ninth Circuit's conclusions.

The Ninth Circuit further referred to an owner's or officer's "non delegable duty" not to discriminate in light of the Act's "overriding societal priority." 258 F. 3d, at 1131, 1132 (citing *Chicago* v. *Matchmaker Real Estate Sales Center, Inc.*, *supra*, at 1096–1097, and *Walker* v. *Crigler*, *supra*, at

904–905). And it added that "[w]hen one of two innocent people must suffer, the one whose acts permitted the wrong to occur is the one to bear the burden." 258 F. 3d, at 1132.

"[A] nondelegable duty is an affirmative obligation to ensure the protection of the person to whom the duty runs." *General Building Contractors Assn., Inc.* v. *Pennsylvania,* 458 U. S. 375, 396 (1982) (finding no nondelegable duty under 42 U. S. C. § 1981). Such a duty imposed upon a principal would "go further" than the vicarious liability principles we have discussed thus far to create liability "although [the principal] has himself done everything that could reasonably be required of him," W. Prosser, Law of Torts § 71, p. 470 (4th ed. 1971), and irrespective of whether the agent was acting with or without authority. The Ninth Circuit identifies nothing in the language or legislative history of the Act to support the existence of this special kind of liability—the kind of liability that, for example, the law might impose in certain special circumstances upon a principal or employer that hires an independent contractor. Restatement § 214; see 5 F. Harper, F. James, & O. Gray, Law of Torts § 26.11 (2d ed. 1986); Prosser, *supra,* § 71, at 470–471. In the absence of legal support, we cannot conclude that Congress intended, through silence, to impose this kind of special duty of protection upon individual officers or owners of corporations—who are not principals (or contracting parties) in respect to the corporation's unlawfully acting employee.

Neither does it help to characterize the statute's objective as an "overriding societal priority." 258 F. 3d, at 1132. We agree with the characterization. But we do not agree that the characterization carries with it a legal rule that would hold every corporate supervisor personally liable without fault for the unlawful act of every corporate employee whom he or she has the right to supervise. Rather, which "of two innocent people must suffer," *ibid.,* and just when, is a complex matter. We believe that courts ordinarily should determine that matter in accordance with traditional principles of

vicarious liability—unless, of course, Congress, better able than courts to weigh the relevant policy considerations, has instructed the courts differently. Cf., *e. g.*, Sykes, The Economics of Vicarious Liability, 93 Yale L. J. 1231, 1236 (1984) (arguing that the expansion of vicarious liability or shifting of liability, due to insurance, may diminish an agent's incentives to police behavior). We have found no different instruction here.

## III

### A

Respondents, conceding that traditional vicarious liability rules apply, see *supra*, at 289, argue that those principles themselves warrant liability here. For one thing, they say, California law itself creates what amounts, under ordinary common-law principles, to an employer/employee or principal/agent relationship between (a) a corporate officer designated as the broker under a real estate license issued to the corporation, and (b) a corporate employee/salesperson. Brief for Respondents 6–8, 13–36. Insofar as this argument rests *solely* upon the corporate broker/officer's *right to control* the employee/salesperson, the Ninth Circuit considered and accepted it. 258 F. 3d, at 1134–1135. But we must reject it given our determination in Part II that the "right to control" is insufficient by itself, under traditional agency principles, to establish a principal/agent or employer/employee relationship.

### B

The Ninth Circuit did not decide whether *other* aspects of the California broker relationship, when added to the "right to control," would, under traditional legal principles and consistent with "the general common law of agency," *Burlington Industries, Inc.* v. *Ellerth*, 524 U. S., at 754 (internal quotation marks omitted), establish the necessary relationship. But in the absence of consideration of that matter by the Court of Appeals, we shall not consider it. See *Pennsylva-*

*nia Dept. of Corrections* v. *Yeskey,* 524 U. S. 206, 212–213 (1998) ("'Where issues [were not] considered by the Court of Appeals, this Court will not ordinarily consider them'" (quoting *Adickes* v. *S. H. Kress & Co.,* 398 U. S. 144, 147, n. 2 (1970))).

Respondents also point out that, when traditional vicarious liability principles impose liability upon a corporation, the corporation's liability may be imputed to the corporation's owner in an appropriate case through a "'piercing of the corporate veil.'" *United States* v. *Bestfoods,* 524 U. S. 51, 63, n. 9 (1998) (quoting *United States* v. *Cordova Chemical Co. of Michigan,* 113 F. 3d 572, 580 (CA6 1997)). The Court of Appeals, however, did not decide the application of "veil piercing" in this matter either. It falls outside the scope of the question presented on certiorari. And we shall not here consider it.

The Ninth Circuit nonetheless remains free on remand to determine whether these questions were properly raised and, if so, to consider them.

\*  \*  \*

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*