LaVonna CASTELLANO; and Project Sentinel, Inc., Plaintiffs,

v.

ACCESS PREMIER REALTY, INC. d/b/a Access Property Management; Daniel Akulow; Dolores Valenzuela; and Elvia J. Addison, Individually and as Trustee, Disclaimer Trust, Addison Revocable Trust dated June 24, 1999, Defendants.

No. 1:15-cv-0407-MCE-KJS

United States District Court, E.D. California.

Signed April 15, 2016

Filed April 20, 2016

Todd Isaac Espinosa, Law Office of Todd Espinosa, Redwood City, CA, for Plaintiffs.

John P. Hallissy, Sacino Bertolino & Hallissy, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER

MORRISON C. ENGLAND, JR., CHIEF JUDGE, UNITED STATES DISTRICT COURT

Plaintiffs LaVonna Castellano and Project Sentinel, Inc. (collectively "Plaintiffs") allege violations of the Fair Housing Act ("FHA") by defendants Access Premier Realty, Inc. and its representatives (collectively "Defendants"). Plaintiffs bring the present Motion for Partial Summary Judgment (ECF No. 23) seeking summary adjudication of Defendants' liability. For the reasons that follow, Plaintiffs' Motion is GRANTED.[1]

### BACKGROUND [2]

In September 2012, Plaintiff LaVonna Castellano rented and occupied an apart-

---

1. Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

2. Unless otherwise noted, the following facts derive from Defendants' Statement of Undisputed/Disputed Facts. See Defs.' Stmt. of Un-

disputed Facts, ECF No. 26. The Court recognizes that Defendants have made numerous evidentiary objections to Plaintiffs' Statement of Undisputed Facts (ECF No. 23), which will be specifically addressed as necessary in the body of this Memorandum and Order. To the extent the Court relies on evidence to which Defendants object, however, Defendants' ob-

ment unit in a complex located at 1405 Eucalyptus Avenue in Newman, CA ("the Apartment"). Defendant Access Premier Realty, doing business as Access Property Management ("APM"), managed Plaintiff's Apartment complex during her tenancy. Defendant Daniel Akulow served as a principal for APM and directed the management of the Apartment complex on APM's behalf. Defendant Elvia Addison owned the Apartment complex as a trustee and paid Defendant Dolores Valenzuela to work as the on-site manager during the relevant period.

Plaintiff Castellano was over sixty years old at the time she resided at the Apartment, and suffered from a variety of mental and physical impairments. In particular, Castellano claims that she suffered from various mental health conditions, including panic attacks, anxiety, depression, psychotic disorder and post-traumatic stress disorder. Castellano Decl. at ¶ 8, ECF No. 11. Castellano was prescribed medication for these ailments and received federal SSI disability benefits for her mental illnesses. Id. While Castellano resided at the Apartment, she had a house cat, "Mr. Munchkin." Id. at ¶¶ 3, 12. Castellano kept the cat in the Apartment, and states in her declaration that the cat gave emotional support and kept her company when she was alone. Id. at ¶ 12. According to Castellano, the cat helped Castellano feel calmer and less anxious, which helped lessen the effects of some of her physical problems. Id. Having Mr. Munchkin in the Apartment made Castellano "feel better, both mentally and physically, and helped [her] to get through each day." Id.

On January 29, 2013, Defendant APM sent Castellano a letter directing her to remove her cat from the Apartment or face eviction, citing the Apartment complex's "no-pets" policy. In response, Castellano sent a handwritten letter to APM in February 2013 asking that she be allowed to keep her cat. The letter stated that she suffered from physical and mental handicaps; she needed the cat for emotional and mental support; the cat caused no damage; the cat was neutered, vaccinated and house-broken; and that Castellano was willing to pay a pet deposit. Around the same time, Castellano's daughter sent an email to APM asking that her mother be permitted to keep the cat. An APM employee responded via email that "[Plaintiff] will not be able to keep her cat" Espinosa Decl. Ex 1, RFA Ex. L, ECF No. 23. (emphasis in original). On February 20, the Stanislaus County Department of Aging & Veteran Services sent a letter to APM requesting a waiver of the Apartment complex policy against pets as a reasonable accommodation for Castellano's disabilities and a cessation of demands that she get rid of her cat or face eviction.

Defendants responded to this request in a February 25 letter from Defendant Akulow to Plaintiff Castellano requesting documentation of her disability-related need for an animal. Akulow's letter required that Castellano provide documentation from an attending physician or psychiatrist "no later than 3/1/13 to prevent lease violation eviction." Espinosa Decl. Ex 1, RFA Ex. D. On March 4, Defendant Valenzuela served Castellano with a "Notice to Perform Covenant (Cure) or Quit" directing Castellano to remove the cat from her apartment within five days. Shortly thereafter, Valenzuela served Castellano with a March 15 "Notice of Termination of Ten-

jections are overruled. Defendants' responses to Plaintiffs' undisputed facts largely consist of evidentiary objections and do not seriously challenge the accuracy of Plaintiffs' undisputed facts. With few exceptions, Defendants fail to point to any evidence contradicting Plaintiffs' factual assertions.

ancy" effective April 15, 2013. The Notice stated, in relevant part, that "[c]ause for action is breach, of tenet [sic] lease agreement regarding failure to adhere to property pet police [sic]." Espinosa Decl. Ex 1, RFA Ex. F.

In response to these notices, Castellano contacted Plaintiff Project Sentinel, Inc. seeking assistance in keeping her cat at the Apartment. Project Sentinel is a nonprofit fair housing organization. On March 22, 2013, Project Sentinel sent APM a letter on Castellano's behalf requesting that APM rescind the termination notice and permit Castellano to remain in the apartment with her cat as a reasonable accommodation for her disabilities. The letter was accompanied by two letters from the Newman Medical Clinic stating that Castellano was under the care of Dr. Philip Kalman at the clinic, listing Castellano's medical diagnoses, and stating that keeping a companion animal would benefit her health. Defendant Akulow responded to Project Sentinel in an April 2 letter stating that Plaintiff Castellano's request for a reasonable accommodation was denied. In response, Project Sentinel sent APM a letter dated April 8 from the Newman Medical Clinic describing Castellano's mental and physical impairments and stating that an emotional support animal "would ease her anxiety and depression" and could "benefit her by improving her medical symptoms." Espinosa Decl. Ex 1, RFA Ex. I. In reply, Akulow sent a fax dated April 12, 2013 declining to credit the April 8 letter from Newman Medical Clinic, declining to grant the requested accommodation, and seeking further detailed information as to Plaintiff Castellano's diagnoses.

On or around May 1, 2013, Plaintiff moved out of the Apartment in order to avoid the further possibility of eviction. Plaintiff Castellano worried that she could lose her Section 8 housing voucher if she was evicted.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325, 106 S.Ct. 2548.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F.Supp. 374, 378–79 (C.D.Cal.1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir.1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S.Ct. 2548. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations...or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir.1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251, 106 S.Ct. 2505 (quoting Improvement Co. v. Munson, 81 U.S. 14 Wall. 442, 448, 20 L.Ed. 867 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a) ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. 1348. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Id. 587, 106 S.Ct. 1348.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255, 106 S.Ct. 2505. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd, 810 F.2d 898 (9th Cir.1987).

## ANALYSIS

Plaintiffs allege two violations of the FHA: (1) refusing to make a reasonable accommodation because of a handicap in violation of 42 U.S.C. § 3604(f); and (2) interfering with the exercise or enjoyment of rights guaranteed by the FHA in violation of 42 U.S.C. § 3617. The Court addresses each claim separately.

### A. Defendants Violated 42 U.S.C. 3604(F) by Failing to Provide Reasonable Accommodation.

The FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of [that person]. 42 U.S.C. § 3604(f)(2)(A)." Prohibited discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford

such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

■ In order to state a FHA claim based on failure to reasonably accommodate, a plaintiff must show that (1) plaintiff suffers from a handicap as defined by the FHA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3)accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable[3]; and (5) defendants refused to make such accommodation. Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175, 1179 (9th Cir.2006). The Court considers each element in turn.

### 1. Plaintiff Castellano is Handicapped under the FHA.

■ The undisputed facts show that Plaintiff Castellano is handicapped under the FHA. A "handicap" is (1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 3602(h). Under the FHA, a "physical or mental impairment" is any mental or psychological disorder, including "emotional illness." 24 C.F.R. § 100.201(a) (defining terms under the FHA). "Major life activity" means activities that are of central importance to daily life, such as caring for one's self, performing manual tasks, speaking, breathing and working. 24 C.F.R. § 100.201(b).

Here, there is no question that Plaintiff Castellano suffers from mental and physical impairments that substantially limit her major life activities. Castellano suffers from a wide variety of ailments, including anxiety disorder, depression and psychotic disorder. Kalman Decl. ¶4, Ex. B, ECF No. 23. Castellano has numerous physical health problems including asthma, chronic obstructive pulmonary disease, and knee pain. Id. She uses a cane and an electric wheelchair and installed a ramp in order to get in and out of the front door to the Apartment. Castellano Decl. ¶ 7. Castellano also receives federal SSI disability benefits. Id. at ¶ 9. See e.g., Sinisgallo v. Town of Islip Housing Authority, 865 F.Supp.2d 307, 338 (E.D.N.Y.2012) ("As a general matter, in most cases, individuals who meet the definition of disability for purposes of receiving SSI or SSDI benefits also qualify as disabled under the federal disability statutes.") In addition, Castellano's treating physician, Dr. Philip Kalman, stated that Castellano suffers from a variety of mental and physical impairments: anxiety disorder, depression, asthma, chronic obstructive pulmonary disease and cardiovascular disease, among other ailments. Kalman Decl. ¶ 7. Dr. Kalman asserts that Castellano's medical conditions affected her ability to breath, walk, perform manual tasks and work. Id. at ¶ 5.

Defendants present no evidence challenging Castellano's assertions regarding her medical conditions or challenging Dr. Kalman's diagnoses. Defendants' so-called factual disputes consist almost entirely of evidentiary objections, which the Court overrules.

### 2. Defendants Knew or Should Have Known of Plaintiff Castellano's Handicap.

■ It is also uncontroverted that Defendants knew or should have known of

---

3. Some courts have treated the reasonableness requirement as an implicit prerequisite for the requirement that accommodation of the handicap is necessary to give a plaintiff equal opportunity to use and enjoy the dwell-ing. See Giebeler v. M & B Associates, 343 F.3d 1143, 1148 (9th Cir.2003). This difference does not change the Court's analysis, and the Court elects to treat both requirements separately here.

Plaintiff Castellano's handicap. Castellano and Project Sentinel sent numerous letters and other correspondence describing Castellano's medical conditions. Castellano initially informed Defendants of her disabilities in a handwritten February 2013 letter. Espinosa Decl. Ex 1, RFA Ex. B. The letter stated that she suffered from mental illness and physical handicaps and that she "[needed] her cat for emotional and mental support." Id. Castellano's daughter sent APM an email also stating that Castellano had physical handicaps and that the cat provided emotional support. Espinosa Decl. Ex. 1, RFA Ex. L. In addition to these letters, Project Sentinel and the Stanislaus County Department of Aging & Veterans Services sent several letters to APM and its representatives describing Castellano's disabilities and asking for permission to keep the cat. Espinosa Decl. Ex. 1, RFA Exs. C, G. Newman Medical Clinic also provided a letter describing Castellano's medical conditions and stating that an emotional support animal would benefit her. Espinosa Decl. Ex. 1, RFA Ex. I.

Defendants respond that they were merely trying to ascertain the extent of Castellano's disability and were reasonably seeking additional documentation. Even if this is true, it does not serve to rebut the charge that they knew or should have known of Castellano's disabilities. See Smith v. Powdrill, 2013 WL 5786586, at *5–6 (C.D.Cal. Oct. 28, 2013) (letters from disabled individual and physician describing impairments and seeking accommodation showed that defendants knew or should have known of disability). In fact, Castellano stated on her rental application for the Apartment that she received SSI disability benefits. Akulow Decl. Ex. A, ECF No. 26. Defendants present no evidence suggesting that they had any doubt as to whether Castellano was in fact disabled. While Defendants argue that their repeated demands for more specific infor-

mation about Castellano's disability amounts to a lack of knowledge, that contention lacks merit since, in the face of the detailed information already provided on Castellano's behalf, the Court cannot ascertain what information could ever satisfy the knowledge requirement were Defendants' position to be accepted. The Court declines to adopt such an extreme position. Castellano's rental application and subsequent letters and supporting documents suffice to put Defendants on notice of her disabilities.

### 3. Accommodation was Necessary for Plaintiff Castellano to Use and Enjoy the Dwelling.

The undisputed facts show that Plaintiff Castellano's requested accommodation was necessary for Castellano to fully use and enjoy the unit. An accommodation is necessary when there is evidence showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability. Smith v. Powdrill, 2013 WL 5786586, at *6 (C.D.Cal. Oct. 28, 2013); see Book v. Hunter, 2013 WL 1193865 (D.Or. Mar. 21, 2013) ("[T]here must be an identifiable relationship, or nexus, between the requested accommodation and the individual's disability.")

A Notice issued by the Department of Housing and Urban Development (HUD), the agency charged with administering the FHA, provides further guidance on the accommodation requirement. See HUD Office of Fair Housing & Equal Opportunity, FHEO Notice FHEO-2013-01 ("Notice FHEO-2013-01"). The Notice states that where a disabled person has a "disability related need for an assistance animal" and "the animal ...provide[s] emotional support that alleviates one or more of the identified symptoms or effects of a person's existing disability" then the FHA

requires the housing provider to provide an exception to a "no-pets" policy. Notice FHEO-2013-01 at 3. The Court grants HUD's Notice considerable and substantial deference. See Pfaff v. U.S. Dep't of Hous. & Urban Dev., 88 F.3d 739, 747 (9th Cir. 1996) ("[HUD's] interpretation of the FHA 'ordinarily commands considerable deference' because 'HUD [is] the federal agency primarily assigned to implement and administer Title VIII.' ").

As the Court previously discussed, Plaintiff Castellano suffers from a variety of mental illnesses, including panic attacks, anxiety, depression, psychotic disorder, and post-traumatic stress disorder. She asserts that interacting with and feeding the cat gave her emotional support and companionship. The cat helped her to feel calmer and less anxious. Castellano asserts that the cat made her feel better, both mentally and physically, and helped her to get through the day. Dr. Kalman also states that keeping an emotional support animal helped to ease and control Castellano's feelings of stress, anxiety and depression. Kalman Decl. at ¶ 6. In turn, alleviating Castellano's stress and anxiety helped to reduce the symptoms of her other impairments such as asthma, chronic obstructive pulmonary disease and cardiovascular disease. Id. at ¶ 7.

Defendants do not substantively challenge this evidence. The uncontroverted evidence shows that keeping a cat as an emotional support animal helped reduce Castellano's stress and anxiety, which in turn helped reduce the symptoms of her other ailments. Thus, there is no triable issue of fact as to whether accommodation was necessary in order for Castellano to use and enjoy the Apartment.

#### 4. The Requested Accommodation was Reasonable.

■ The undisputed facts show that Plaintiff Castellano's requested accommodation was reasonable. An accommodation is reasonable under the FHA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens. Giebeler v. M & B Associates, 343 F.3d 1143, 1157 (9th Cir. 2003). The history of the FHA establishes that landlords may have to shoulder certain costs, so long as they are not unduly burdensome. United States v. California Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1416 (9th Cir.1994).

■ Here, although the precise contours of the burden of proof are uncertain, Giebeler, 343 F.3d at 1156–57, Plaintiffs have sufficiently shown that their requested accommodation was reasonable. Plaintiff Castellano claimed her cat was "sweet tempered and caused no damage" and advised Defendants that she was willing to "pay a pet deposit if that would help." Espinosa Decl. Ex 1, RFA Ex. B. Defendants do not seriously contest any of Plaintiffs factual claims about the reasonableness of providing an exception for Castellano's cat. Most significantly, Defendant Akulow states that APM has permitted emotional support animals in the past for other tenants. Akulow Decl. at ¶ 18. Moreover, Akulow asserts that he "would have done so [provided an exemption] in the case of Ms. Castellano had she simply provided the documentation I was reasonably requesting." Id. Even aside from the fact, as discussed above, that Plaintiffs did provide all necessary documentation, these statements are strong evidence that providing Castellano with an exception to the "no-pet" policy would impose no fundamental alteration of Defendants' housing services nor pose undue financial or administrative burdens.

Defendants' claims that they were worried about fleas and the safety of other residents also fail to create a triable issue. Any determination that an emotional sup-

port animal poses a threat of harm to others or would damage the property of others must be based on an individualized assessment of the specific animal's actual conduct. Notice FHEO-2013-01 at 3. The assessment may not be speculative and may not be based on evidence of harm that other animals have caused. Id. Defendants have not contradicted Plaintiffs' assertions that Castellano's cat was neutered, vaccinated and housebroken, nor have they provided any evidence specifically related to Castellano's cat. Defendants have only proffered general concerns about health and safety. These general concerns do not rebut Plaintiffs' claim that allowing Plaintiff Castellano to keep her cat was a reasonable accommodation.

### 5. Defendants Failed to Provide Plaintiff Castellano Such an Accommodation.

Finally, the uncontroverted evidence shows that Defendants failed to provide Plaintiff Castellano with a reasonable accommodation when they refused to permit Castellano to keep her cat. Defendants responded to Plaintiffs' repeated requests for accommodation with denial and delay. Defendants' argument that they did not refuse to provide the accommodation and were merely seeking additional information is not well-taken. Even though refusal may be accompanied by other acts, refusal alone is violative of § 3604(f)(3)(B). Smith v. Powdrill, 2013 WL 5786586, at *8 (C.D.Cal. Oct. 28, 2013). If an accommodation is required under the FHA, the reason for the denial is irrelevant in establishing that a violation occurred. Rodriguez v. Morgan, 2012 WL 253867, at *4 (C.D.Cal. Jan. 26, 2012). Moreover, Defendants' claim glosses over the fact that while Defendants were purportedly seeking additional information, they (1) told Castellano's daughter that Castellano would not be able to keep the cat; (2) gave Castellano a "Notice to Perform Covenant (Cure) or Quit" directing removal of the cat; (3) gave notice of termination of tenancy based on violation of the "no-pet" policy; and (4) denied Castellano's request for an emotional support animal because "[she] did not show a disability related need for the accommodation." Akulow Decl., Ex. F. Ultimately, according to Castellano, she left the Apartment because she was in the untenable position of choosing between keeping her cat and risking loss of her Section 8 eligibility.

Even taking at face value Defendants' claim that they were merely seeking additional information, Defendants have still not raised an issue of material fact as to refusal. Uncertainty as to the disability is not grounds for denying a reasonable accommodation request for an assistance animal. Notice FHEO-2013-01 at 3. In the instance that a disability is not immediately clear, housing providers are permitted to ask for supporting documentation from a "physician, psychiatrist, social worker, or other mental health professional" indicating that the animal provides emotional support that alleviates identifiable symptoms. Id. at 3-4. "Such documentation is sufficient if it establishes that an individual has a disability and that the animal in question will provide type of disability-related assistance or emotional support." Id. at 4. The documentation provided by Dr. Kalman and the Newman Medical Clinic easily satisfies this requirement. The April 8, 2013 correspondence from Dr. Kalman to APM states that Castellano suffers from "anxiety disorder…and depression" and that "[a]n emotional support animal would ease her anxiety and depression." Espinosa Decl. Ex. 1, RFA Ex. I. Plaintiffs need provide nothing more to meet the requirements of the FHA. Since Plaintiffs satisfied this requirement, Defendants had no basis to continue seeking additional information and any further de-

lay in granting the accommodation constituted refusal. There is no dispute of material fact that Defendants refused Plaintiffs' request for a reasonable accommodation.

Plaintiffs have established a violation of 42 U.S.C. § 3604(f) for failing to provide a reasonable accommodation under the FHA. Defendants raise no triable issue of material fact and the Court GRANTS partial summary judgment as to Defendants' liability under § 3604(f).

**B. Defendants Violated 42 U.S.C. § 3617 By Interfering with Plaintiffs' Rights Protected under the FHA.**

The FHA makes it unlawful "to...interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed,...any right granted or protected by [42 U.S.C. § 3604.]" 42 U.S.C. § 3617. The language of the FHA is to be interpreted in a broad and inclusive manner. Walker v. City of Lakewood, 272 F.3d 1114, 1129 (9th Cir. 2001). "Interference" has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under federal fair housing laws. Id. Interference is the act of meddling in or hampering an activity or process. Id.

The undisputed facts show that Defendants meddled with Plaintiff Castellano's exercise of her right to obtain a reasonable accommodation for her handicap under the FHA. Defendants responded to Castellano's initial request to keep her cat with a Notice to Perform Covenant (Cure) or Quit. Defendants responded to a similar request from Stanislaus County by issuing a Notice of Termination to Castellano. The approach taken by Defendants would give a person in Castellano's position pause in seeking to enforce her right to obtain a reasonable accommodation for her handicap. See Smith v. Powdrill, 2013

WL 5786586, at *10 (C.D.Cal. Oct. 28, 2013) (response to reasonable accommodation request by issuing a "Notice to Perform Conditions and Covenants or Quit" constituted interference under § 3617). Defendants do not contest any of these facts. Ultimately, Castellano asserts she left the Apartment due to concern that she would be evicted if she continued to reside at the Apartment with her cat.

Plaintiffs have established a violation of 42 U.S.C. § 3617 for interfering with the exercise and enjoyment of rights provided under the FHA. Defendants raise no triable issue of material fact and the Court GRANTS partial summary judgment as to Defendants' liability under § 3617.

**C. Defendant Addison is Vicariously Liable as the Apartment Owner.**

Finally, Plaintiffs ask that the Court find Defendant Addison vicariously liable for the actions of Defendants APM, Akulow and Valenzuela. Where the agent or property manager of a property owner violates FHA requirements, the property owner may be vicariously liable for those violations. See Meyer v. Holley, 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) ("[I]t is well established that the [FHA] provides for vicarious liability."); Nelson v. U.S. Dep't of Hous. & Urban Dev., 320 Fed.Appx. 635, 638 (9th Cir.2009) (following Meyer). Defendants do not dispute that during Plaintiff Castellano's tenancy at the Apartment, Defendants APM, Akulow, and Valenzuela acted as agents of Defendant Addison, or acted on behalf of Defendant Addison. ECF No. 9 at ¶ 10; ECF No. 11 at ¶ 10; Defs.' Stmt. of Undisputed Facts at ¶ 6. Because Defendants have admitted that APM, Akulow and Valenzuela are agents of Addison, the Court finds that Addison is vicariously liable for the violations of §§ 3604(f) and 3617. See Lockwood v. Wolf Corp., 629 F.2d 603, 611

810

(9th Cir.1980) (party moving for summary judgment must offer evidence to support a finding of every element of a claim for relief, except those elements admitted by the opposition). Vicarious liability is not absolute in FHA cases, and the Supreme Court rejected the view that the duty not to discriminate is non-delegable. See Meyer, 537 U.S. at 286–87, 123 S.Ct. 824 (applying "traditional vicarious liability rules" to violations of the FHA). Here, however, Defendants have presented no evidence suggesting that vicarious liability is inappropriate. Instead, they have admitted that APM, Akulow and Valenzuela were in fact agents of Addison, and that Addison directly paid Valenzuela for her work as the on-site manager. ECF No. 11 at ¶ 8. Moreover, Defendants have failed to respond to any of Plaintiffs' arguments that the Court should find Addison vicariously liable. In light of Defendants' admissions, the Court finds that Defendant Addison is vicariously liable for the actions of Defendants APM, Akulow and Valenzuela.

## CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment (ECF No. 23) as to Defendants' liability is GRANTED as follows:

1. The Motion is GRANTED as to Defendants' liability under 42 U.S.C. § 3617(f).

2. The Motion is GRANTED as to Defendants' liability under 42 U.S.C. § 3604.

3. The Motion is GRANTED as to Defendant Addison's vicarious liability.

IT IS SO ORDERED.