SHWARTZ, Circuit Judge, concurring.
I agree with my colleagues that the District Court's jury instructions were not erroneous and its judgment should be affirmed. However, the majority questions-in dicta-whether a corporate officer may be held personally liable under the TCPA. I write separately because a corporate officer indeed may be held personally liable under the TCPA for sending unsolicited fax advertisements for the officer's corporation.
I
Like the majority, I start with the statute's text. The TCPA makes it "unlawful for any person within the United States ... to use any telephone facsimile machine ... to send[ ] to a telephone facsimile machine[ ] an unsolicited advertisement[.]" 47 U.S.C. § 227(b)(1)(C). Any "person" includes individuals and corporations. 1 U.S.C. § 1. The statute is silent, however, "as to who should be classified as a sender of unsolicited fax advertisements." Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1256 (11th Cir. 2015). Faced with this silence, the FCC addressed the question of whether fax broadcasters can be liable under the TCPA for sending unwanted faxes on behalf of another. The FCC stated that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements, and that fax broadcasters are not liable for compliance with this rule." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 FCC Rcd. 12391, 12407 (1995). That interpretation, however, does not address whether individuals such as corporate officers who authorized a broadcaster to send fax advertisements may be held liable.
Given the statute's and FCC's silence on this particular question, we look to the legislative backdrop to the TCPA. The TCPA codifies common law torts such as invasion of privacy, nuisance, and trespass to chattels. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012) (stating that Congress enacted the TCPA to, among other things, curtail "intrusive invasion[s] of privacy" (citation and internal quotation marks omitted) ); Maryland v. Universal Elections, Inc., 729 F.3d 370, 376-77 (4th Cir. 2013) (explaining that the TCPA is meant to protect privacy); Bell v. Survey Sampling Int'l, LLC, No. 3:15-CV-1666 (MPS), 2017 WL 1013294, at *3 (D. Conn. Mar. 15, 2017) (explaining that the TCPA embodies the common-law tort of invasion of privacy); Klein v. Hyundai Capital Am., No. 8:16-cv-01469-JLS-JCGx, 2016 WL 10519281, at *2 (C.D. Cal. Dec. 6, 2016) (stating that " '[t]he TCPA codifies one application of the long-recognized common *164 law tort of invasion of privacy' as well as 'the tort of nuisance.' " (alterations omitted) (quoting LaVigne v. First Cmty. Bancshares, Inc., 215 F.Supp.3d 1138, 1147 (D.N.M. 2016) ) ); Mey v. Got Warranty, Inc., 193 F.Supp.3d 641, 645, 647 (N.D.W. Va. 2016) (stating that "the TCPA can be seen as merely liberalizing and codifying the application of th[e] common law tort [of intrusion-upon-seclusion as invasion of privacy] to a particularly intrusive type of unwanted telephone call" and that unwanted calls bear "a close relationship" to the "ancient common law tort" of trespass to chattels). "[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related ... liability rules and consequently intends its legislation to incorporate those rules." Meyer v. Holley, 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003). A statute's silence as to those background rules "cannot show that [Congress] intended to apply an unusual modification of those rules." Id. at 286, 123 S.Ct. 824. Thus, we consider the TCPA's language in light of common-law tort principles.
The most relevant tort principle here is that corporate officers can be personally liable for their own torts. Specifically, "[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort." Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978) ; see also, e.g., Zubik v. Zubik, 384 F.2d 267, 275 (3d Cir. 1967) ("The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort ... unless he specifically directed the particular act to be done, or participated, or cooperated therein." (quoting 3 Fletcher Cyclopedia of the Law of Corporations § 1137 (perm. ed. rev. 1965) ) ); Hitchcock v. Am. Plate Glass Co., 259 F. 948, 953 (3d Cir. 1919) (holding that an officer of a corporation is a joint tortfeasor, along with the corporation, as to torts "which he actually brings about" and "in which he actually participates"). Applying this common-law rule to TCPA claims is consistent with the FCC's interpretation of "sender" because, as long as the officer is sufficiently involved in the illegal fax transmissions, liability lies with him or her as a "person" who is the source of the wrongful conduct. See Palm Beach Golf Center-Boca, 781 F.3d at 1257 ("By construing the sender as the party 'on whose behalf facsimiles are transmitted,' the FCC has placed liability at the source of the offending behavior that Congress intended to curtail." (citation omitted) ). Moreover, other statutes that use the term "any person" also have been interpreted to apply to corporate officers. See, e.g., Maryland v. Universal Elections, 787 F.Supp.2d 408, 416 (D. Md. 2011) (noting several statutes that impose liability on "any person," including corporate officers in their personal capacity). Thus, corporate officers who personally engage in or authorize actions that violate the TCPA may be held liable for those violations.
Miley argues that he cannot be liable under the personal-participation theory because it is equivalent to an aiding-and-abetting claim. His argument fails. Aiding-and-abetting liability "create[s] secondary liability in persons other than the violator of the statute," id. at 184, 114 S.Ct. 1439 (citation and internal quotation marks omitted), and thereby extends liability to those who aid the violator, id. at 176, 114 S.Ct. 1439. Personal-participation liability differs from aiding-and-abetting liability. The former penalizes a tortfeasor for conduct *165 that violates or causes the violation of the statute, while the latter penalizes conduct that does not itself violate the statute. See Balt.-Wash. Tel. Co. v. Hot Leads Co., 584 F.Supp.2d 736, 745-46 (D. Md. 2008) (rejecting a claim for aiding-and-abetting a TCPA violation but stating that individual corporate defendants can be liable under the TCPA because of their involvement in sending unsolicited faxes or causing such faxes to be sent); cf. Elec. Lab. Supply Co. v. Cullen, 977 F.2d 798, 803-08 (3d Cir. 1992) (rejecting an aiding-and-abetting theory of liability under the Lanham Act's ex parte seizure provision because the provision specifically governs the "applicant" whose trademark was violated, and the term "applicant" is narrower than the term "any person" under § 43(a) of the Lanham Act, which provides a basis for personal liability of corporate officers). The fact that a statute does not explicitly provide for aiding-and-abetting liability does not mean that it forecloses personal liability for violations of the statute.
Accordingly, notwithstanding the TCPA's silence as to personal liability for corporate officers and the FCC's interpretation concerning whether a fax broadcaster can be liable, a corporate officer can face personal liability under the TCPA for actions he personally authorized or took. The District Court's instructions properly informed the jury of this basis for liability.
II
For these reasons, I concur.