Filed 9/4/20  Garcia v. Gresham Apartments Investors CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FIVE

| | |
|---|---|
| ALBERT GARCIA et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> GRESHAM APARTMENTS INVESTORS, <br><br> Defendant and Respondent. | B299066 <br><br> (Los Angeles County Super. Ct. No. BC699421) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Reversed.

Ross & Morrison, Andrew D. Morrison, for Plaintiffs and Appellants.

LightGabler, Maureen M. Home and Glenn J. Dickinson, for Defendant and Respondent Gresham Apartments Investors.

———————————————————

Gerald Doren and Sheldon Seltzer, through various entities, owned a number of residential apartment buildings; one such ownership entity is known as Gresham Apartments Investors ("Gresham"). They also formed a management company whose only business was to manage residential real estate owned by Doren, Seltzer, and their families; that company is Sierra Management. Plaintiffs and appellants Albert and Stephanie Garcia were hired by Sierra Management as live-in managers at the Gresham property.

Shortly after Albert Garcia was diagnosed with cancer, Doren, with Seltzer's concurrence, terminated the Garcias' employment, which resulted in the loss of their apartment. The Garcias brought suit against both Sierra Management and Gresham, alleging violations of the employment and housing provisions of the Fair Employment and Housing Act (FEHA). Gresham, alone, moved for summary judgment, on the basis that when Doren and Seltzer had fired the Garcias, they had been acting on behalf of Sierra Management, not Gresham, and Gresham was not otherwise liable for Sierra Management's actions. The trial court agreed and granted summary judgment. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Underlying Facts*

Because summary judgment was granted to Gresham on the issue of lack of entity liability, we need not discuss the underlying facts in significant detail. In August 2013, the Garcias were hired by Sierra Management to manage the property owned by Gresham. Pursuant to their employment agreement, they received a monthly salary plus "free rent occupancy" of a unit on the premises. The employment

2

agreement expressly states that it does not create "the relationship of landlord and tenant between [the Garcias] and [Sierra Management]. Rather [the Garcias are] entitled to occupy the unit, as a term and condition of employment only."

In March 2017, Albert Garcia was diagnosed with thyroid cancer and commenced treatment. That month, the Garcias informed Seltzer and Doren. On November 10, 2017, the Garcias were fired, which resulted in the loss of their apartment. They allege they were fired "on false and pretextual grounds, based on [Albert Garcia]'s medical conditions/disability (cancer), need for and/or request for accommodation, association, and/or other protected characteristic(s)."

## 2. *The Relationship Between the Two Seltzer-Doren Entities*

Because Gresham obtained summary judgment on the theory that if any entity was liable, it was Sierra Management only, the relationship between Gresham and Sierra Management is critical to our disposition of the appeal. Unfortunately, this issue was complicated by Gresham de-emphasizing key facts in its summary judgment motion, and by Garcias' counsel committing a procedural default in opposition.

The truth, however, is actually undisputed. The owner of the building is Gresham Apartment Investors – an entity which was formed solely to hold title to the apartment building at issue. Gresham is a general partnership, the general partners of which are Seltzer Real Estate, LP and Doren Real Estate, LP. Seltzer is a principal of Seltzer Real Estate; Doren is a principal of Doren Real Estate.[1]

---

[1] Gresham did not identify the other partners in the limited partnerships or their relative shares. Seltzer testified at

The management company is Seltzer-Doren Management Company, Inc., dba Sierra Management. Seltzer is Sierra Management's Vice President and Secretary; Doren is Sierra Management's President and Treasurer. Sierra Management was formed by Seltzer and Doren to manage several dozen properties owned by the Seltzer and Doren families. Gresham contracted with Sierra Management to manage the Gresham property.[2]

A declaration submitted in support of Gresham's summary judgment motion included Seltzer and Doren on a lengthy list of Sierra Management employees "who communicated with [the Garcias] during their employment, including those that were involved in the hiring, supervision, management and termination of [their] employment." The Garcias would later submit deposition excerpts that Doren oversees the property management of the buildings, is principally involved in the hiring of property managers, and has the final say in terminating them. Doren admitted he was involved in the decision to terminate the Garcias. Seltzer could not recall if he was also involved in the termination decision, but he admitted that he had agreed with

deposition that either he, or his family, has a 50 percent ownership interest in the Gresham property. Doren similarly testified that he has a 50 percent ownership interest in the Gresham property.

[2] The parties did not submit the contract as part of the record on summary judgment. Seltzer's declaration states that "[m]ore than 25 years ago, Gresham contracted [Sierra Management] to manage the Subject property."

4

it.[3]  Scott Reed, the Sierra Management employee who immediately supervised the Garcias, testified that both Doren and Seltzer made the decision to terminate the Garcias and both of them told him as much.

### 3.     *Allegations of the Complaint*

The Garcias asserted three causes of action against defendants Gresham and Sierra Management:  (1) violation of FEHA – employment; (2) violation of FEHA – housing; and (3) wrongful termination.

The Garcias alleged that the named defendants "owned and/or operated the property . . . and acted as plaintiff's employer/co-employer, and/or landlord."

The Garcias also included allegations of vicarious liability, via agency, alter ego, and joint employer.

### 4.     *Gresham's Summary Judgment Motion*

Gresham sought summary judgment or summary adjudication of six separate issues – only four of which are relevant on appeal:[4]

---

[3]     As we will discuss, the trial court sustained Gresham's objection to these deposition excerpts due to what the trial court considered a procedural default.  Nevertheless, on appeal, Gresham concedes these facts are undisputed.

[4]     The remaining two issues were (1) the Garcias' claim for punitive damages, which rises and falls with the resolution of the substantive claims; and (2) Gresham's assertion that the Garcias failed to exhaust their administrative remedies as to it.  The trial court found a triable issue of fact on this point, and Gresham does not challenge that part of the ruling on appeal.

(A) That the Garcias "were never employed by Gresham," entitling Gresham to judgment on the FEHA-employment and wrongful termination causes of action;

(B) That the Garcias cannot establish that Gresham and Sierra "(1) are a single employer or integrated enterprise; (2) are joint employers; (3) that one entity is the agent of the other entity; or (4) one entity is the alter ego of the other," justifying judgment on the FEHA-employment and wrongful termination causes of action;

(C) That there was no landlord-tenant "or other housing relationship" between the Garcias and Gresham, entitling Gresham to judgment on the FEHA-employment cause of action; and

(D) That the Garcias "cannot show that any actions alleged in their [complaint] were carried out by an employee(s) who were acting within the scope of their agency or employment for Gresham," entitling Gresham to judgment on the FEHA-housing cause of action.

Gresham's summary judgment motion took the position that the termination of the Garcias was an act taken by individuals acting solely in their capacity as Sierra Management employees – without openly acknowledging that those individuals were Seltzer and Doren, who also had ownership interests in Gresham.

According to the motion, "Gresham and Sierra Management are separate and distinct business entities who have always operated independently and without any joint operation or joint labor relations." Gresham's motion argued, "Gresham had no relationship to or control over Sierra Management's employees who were involved with the Subject

6

Property and therefore cannot be held vicariously liable for their actions.  The managing agents of Sierra Management acted exclusively on behalf of themselves or Sierra Management."

Both Seltzer and Doren submitted declarations that the only communications they ever had with the Garcias were in their capacity as officers of Sierra Management.[5]

5. ***The Garcias' Opposition***

The Garcias' opposition argued "that defendant Gresham's two individual principals (Sheldon Seltzer and Gerald Doren) monitor and control their properties (including the Gresham property) on a day-to-day basis; have ultimate authority over property management decisions affecting the Gresham Property,

---

[5]    The Garcias objected to these statements as legal conclusions.  The trial court overruled the objections.  In *Golden W. Baseball Co. v. Talley* (1991) 232 Cal.App.3d 1294, a former City Manager was sued; in support of his motion for summary judgment, he submitted a declaration stating that he had been acting at all times in the course of his employment.  The plaintiff argued that this was an inadmissible legal conclusion.  The trial court held that the statement, which was otherwise uncontradicted by the plaintiff, was sufficient to establish that the defendant had, in fact, been working in his official capacity.  On appeal, the Court of Appeal agreed, holding that a government employee's uncontroverted declaration that he was acting in the course of employment is dispositive when the opposing party never asserted a theory as to how the employee could have been acting outside his official duties.  (*Id.* at pp. 1304-1305.)  Based on this authority, we conclude that the trial court did not err in overruling the Garcias' objection that the declaration was conclusory.  However, as the Garcias did offer a reasonable competing theory – that Seltzer and Doren were acting in their capacity as owners of the Gresham property – the declarations are not dispositive on this point.

7

including property managers personnel decisions; and personally made the decision to terminate plaintiffs' employment and housing accommodations on the Gresham property in this case."

As relevant to both housing and employment causes of action, the Garcias argued triable issues of fact existed as to multiple theories of vicarious liability, including that Sierra Management was Gresham's agent for whose acts Gresham was responsible under respondeat superior. The Garcias specifically relied on the evidence of Seltzer and Doren's day-to-day participation in the operation of Sierra Management. The Garcias argued that Seltzer and Doren "ran the operation from both ends, and in so doing made all key personnel decisions. This included hiring and firing plaintiffs, and providing them with, then taking away, housing accommodations."

The evidence on which the Garcias relied to establish Seltzer and Doren's involvement in Sierra Management and the Garcias' termination included 24 pages excerpted from Seltzer's deposition; 5 pages excerpted from the deposition of the Garcias' immediate supervisor, Reed; 11 pages excerpted from the deposition of the chief financial officer of Sierra Management; and what was supposed to be some pages excerpted from the deposition of Doren, but was instead (mistakenly) additional pages of the Seltzer deposition. The deposition excerpts which were attached did not have highlighting on the relevant portions, an error upon which Gresham pounced.

### 6. *Gresham's Evidentiary Objections*

In addition to its formal reply, Gresham also filed evidentiary objections to the Garcias' evidence.

California Rule of Court, rule 3.1116, subdivision (c), provides that when deposition testimony is used as an exhibit,

8

"[t]he relevant portion of any testimony in the deposition must be marked in a manner that calls attention to the testimony." Although the Garcias had complied with subdivision (b) of the rule, which requires the party to include "only the relevant pages of the transcript," the Garcias had failed to mark the testimony on those pages to which they wished to call the court's attention. Gresham objected to all of the deposition excerpts the Garcias had submitted in this condition, and also noted the Garcias' failure to include Doren deposition excerpts as they had apparently intended.

## 7.    *Gresham's Reply*

Despite its evidentiary objections, Gresham conceded that Seltzer and Doren were involved in the day-to-day operation of Sierra Management.  Indeed, Gresham submitted additional deposition excerpts of Seltzer and Doren identifying their daily tasks.  Gresham argued, however, "that the undisputed evidence only shows that Mr. Seltzer and Mr. Doren were acting on behalf of Sierra Management while doing these things.  There is no evidence that Mr. Seltzer or Mr. Doren were acting on behalf of Gresham at any time in their dealings with the management and operation of the Subject Property or their dealings with Sierra Management's employees."

Gresham also argued that there is no evidence of agency, on the theory that in order to establish agency, the Garcias would have to show that Gresham exercised control over the employment decisions at Sierra, which it did not.  "To the contrary, the undisputed evidence shows that Sierra Management, through its own employees, conducted its own business in property management, made its own employment decisions free of any control by Gresham which was formed

9

merely to hold title to a piece of property." Of course, Sierra Management's "own employees" who were making these decisions were Seltzer and Doren.

## 8. *The Garcias' Corrected Submissions*

Gresham's reply and objections were served, by overnight delivery, on Friday, March 22, 2019. On Monday, March 25, for reasons that are not stated in the record, the court continued the hearing on the motion from March 27 to March 29. On March 28, the day before the hearing, the Garcias re-filed their opposition evidence, this time with the 40 pages of relevant deposition excerpts underlined and the additional 38 pages of Doren's deposition previously omitted. Counsel apologized for its clerical errors in preparing the initial submission.

Included in the new Doren deposition transcript excerpts was Doren's admission that Gresham gets to decide "who it gets to hire as property managers."

## 9. *The Court's Ruling*

The record on appeal does not include a reporter's transcript of the hearing on the motion. The trial court's minute order indicates that it overruled all of the Garcias' evidentiary objections and sustained nearly all of Gresham's.[6] The court's order does not specifically address the Garcias' submission of corrected evidence, but, as the court sustained the objections based on the original submission's failure to comply with Rule 3.1116, it appears the court rejected the corrected submission.

Turning to the merits, the court granted summary judgment. As to the FEHA-employment and wrongful

---

[6] The court overruled two of Gresham's objections, which related to the Garcias' evidence of exhaustion of administrative remedies.

termination causes of action, the court concluded the Garcias had no employer-employee relationship with Gresham. The court concluded that Gresham met its burden of establishing that Sierra, not Gresham, was the Garcias' employer, thus shifting the burden to the Garcias to establish a triable issue of fact. Concluding that the Garcias "do not show by way of admissible evidence" that Gresham ever communicated with them about their employment, controlled their work, or paid their wages, the court found they did not meet their burden. The court stated that the Garcias relied only on evidence that the principals of Gresham were the same as the principals of Sierra Management, but the mere fact of common ownership does not establish that Gresham is an employer.

As to the FEHA-housing cause of action, the court agreed that no landlord/tenant relationship had been created. As the Garcias had been granted the right to use the apartment only as part of their employment compensation, they were only licensees, not tenants. The court impliedly concluded that a landlord/tenant relationship was a prerequisite to the FEHA-housing claim the Garcias were pursuing, and did not address any other basis for FEHA-housing liability which had been pleaded.

The court also rejected all of the Garcias' proposed bases for vicarious liability. Specifically as to agency, the court held that Gresham met its burden by establishing that Sierra made all decisions with respect to the management of the property without consulting Gresham. The court found the Garcias failed to raise a triable issue of fact, as they relied solely on common ownership "without presenting admissible evidence of the degree of control exercised by [Gresham] over Defendant Sierra."

11

**10.** *Judgment and Appeal*

The court entered judgment for Gresham accordingly. The Garcias filed a timely notice of appeal.

### DISCUSSION

We first consider whether the court abused its discretion in excluding the vast bulk of the Garcias' evidence; we conclude that it did. Turning to the merits of the summary judgment motion, we conclude the motion should have been denied – both because Gresham failed to meet its burden as moving party on the employment causes of action, and upon a consideration of the Garcias' improperly-excluded evidence in opposition.

**1.** *The Court Abused Its Discretion In Declining to Consider the Garcias' Evidence*

In sustaining Gresham's objections to the Garcias' evidence, the court impliedly made two rulings which we consider separately. First, it declined to consider the 40 pages of deposition excerpts which were submitted without the relevant passages being marked, and also declined to consider the marked excerpts submitted prior to the hearing. Second, it declined to consider the 38 pages of Doren deposition excerpts erroneously omitted from the opposition, but also submitted prior to the hearing.

A. *Standard of Review*

We review for abuse of discretion a trial court's decision to grant a motion for summary judgment because the opposing party failed to comply with the requirement for a separate statement or other procedural defect. (*Hollywood Screentest of America, Inc. v. NBC Universal, Inc.* (2007) 151 Cal.App.4th 631, 644; *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1208.) "In applying the abuse

12

of discretion standard of review, it is not the role of the appellate court to substitute its own view as to the proper decision. [Citation.]  The trial court's discretion, however, 'is not unlimited and must be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.  [Citations.]'  [Citation.]  Moreover, we carefully examine a trial court order finally resolving a lawsuit without permitting the case to proceed to a trial on the merits. [Citations.]" (*Parkview Villas,* at pp. 1208-1209.)

When faced with a procedural default which makes it more difficult for the trial court to efficiently resolve the summary judgment motion, the court is not required to simply ignore the defect.  "It is appellants' duty to direct the court to evidence that supports their claims.  It is not the court's duty to rummage through the papers to construct or resuscitate their case." (*Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 75.)  However, a trial court can, and sometimes must, grant the party an opportunity to correct its defective submission before entering summary judgment against it for a procedural default.  (*Parkview Villas, supra,* 133 Cal.App.4th at pp. 1214-1215.)

While case law does not delineate circumstances deserving a second chance, cases on both sides of the line are illustrative.  A trial court which declined to read "over 1,500 pages of unmarked deposition" on the ground they were not marked in accordance with the predecessor to Rule 3.1116 did not abuse its discretion. (*Hollywood Screentest of America, supra,* 151 Cal.App.4th at pp. 641, 644-645.)  A trial court also acted within its discretion in striking the plaintiff's opposition papers when, after the court identified procedural defects in the papers and directed the plaintiff to refile them in compliance with the applicable rules,

13

the resubmitted papers still failed to comply. (*Collins, supra,* 144 Cal.App.4th at pp. 70-72.) In contrast, a trial court abused its discretion in granting summary judgment based on the plaintiff's failure to file a separate statement which specifically referred to the portions of the relevant evidence on which it relied for its opposition to each proposed fact. The court was obligated to first grant the plaintiff an opportunity to fix its procedural error, possibly conditioned on the payment of sanctions. (*Parkview Villas, supra,* 133 Cal.App.4th at pp. 1204-1205, 1208, 1212.)

       B.     *The Failure to Mark Relevant Passages in 40 Pages of Deposition Excerpts*

The failure to mark excerpts on a few dozen pages of deposition testimony appears to us to be on the side of de minimus noncompliance. The Garcias' separate statement properly identified the relevant portions of the deposition excerpts in connection with each disputed fact; and the Garcias submitted only the relevant pages, not the entire transcripts. They assuredly failed to mark those portions on 40 pages of deposition excerpts, something we would not expect most lawyers to do. The Garcias' failure to mark did not require the court to pore over hundreds or thousands of pages to search for the relevant evidence. The court could have overlooked this error. Even if we were to assume the court acted within its discretion in not ignoring the defect, the court then abused that discretion by not allowing the Garcias an opportunity to cure. Reasonable monetary sanctions should have been a sufficient reminder of counsel's obligation to follow court rules and would compensate Gresham for any continuance the trial court may have ordered. (See *United Community Church v. Garcin* (1991) 231 Cal.App.3d

14

327, 335 ["The failure to file a responsive separate statement usually results in a continuance of the motion to permit the filing of proper papers and an award of fees and costs as a condition of the continuance for purposes of complying with the statute."].)

As explained in *Parkview Villas*, "in the absence of extraordinary circumstances not present here, a trial court faced with an opposing party's defective separate statement plainly indicating which proposed material facts are disputed and including at least general references to the evidence supporting its position does not have the discretion to enter a judgment against that party solely as a result of that party's failure to explain the nature of the dispute and to provide sufficiently specific citations to the evidence supporting its position. [Citations.]" (*Parkview Villas, supra,* 133 Cal.App.4th at pp. 1214-1215.) We are mindful that *Parkview Villas* addressed an omitted separate statement; plaintiffs here did not comply with the highlighting rule. We see little difference; if anything the failure to file a separate statement is the more egregious failure.

Although the court did not expressly grant summary judgment because of the procedural default, it effectively did. The court sustained objections to nearly all of the Garcias' evidence, then granted summary judgment on the basis that in many respects the Garcias had submitted no admissible evidence to raise a triable issue of fact. Under these circumstances, *Parkview Villas* required an opportunity to cure.

C.     *The Erroneous Attachment of the Wrong Deposition*

The record is clear from the Garcias' opposition that the Garcias intended to include excerpts from Doren's deposition transcript. Their separate statement cites to specific pages and

15

line numbers of the Doren deposition, and their declaration of counsel in opposition to the summary judgment motion purports to authenticate the deposition as an exhibit. That it was mistakenly omitted cannot reasonably be disputed.

We agree with Gresham that, when a party omits evidence from a summary judgment motion, the party has no automatic right to be offered an opportunity to correct that omission. We also side with the Garcias that the court abused its discretion in declining to accept the Garcias' voluntary correction of the problem, when they submitted the Doren deposition excerpts prior to the hearing.

We find significant that there were only 38 pages of testimony. Although direct calendar courts do not have time to throw around, the 38 pages would not likely result in an undue consumption of time. Second, the evidence appeared critical to a resolution of the motion on the merits. This case turns on a simple question: the capacity in which Doren acted when he terminated the Garcias' employment and housing. Declining to consider Doren's own deposition testimony on this point for counsel's mistake appears to be an unnecessary elevation of form over substance.

2. ***The Trial Court Erred in Granting Summary Judgment***

A. *Standard of Review*

" 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.' [Citation.] The pleadings define the issues to be considered on a motion for summary judgment. [Citation.] As to each claim as framed by the complaint, the defendant must present facts to negate an

16

essential element or to establish a defense.  Only then will the burden shift to the plaintiff to demonstrate the existence of a triable, material issue of fact.  [Citation.]"  (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  We review orders granting or denying a summary judgment motion de novo.  (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579.)

We exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law."  (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

B.      *Employment Causes of Action*

The Garcias' first cause of action is for disability discrimination under FEHA-employment; their third is for wrongful termination.

Government Code section 12940, subdivision (a) provides in part that it is an unlawful employment practice to discharge a person from employment on the basis of physical disability.[7]

---

[7]      As Gresham's summary judgment motion was based solely on its purported status as an entity that did not employ the Garcias and was not vicariously liable for Sierra Management's termination of the Garcias' employment, we assume for the purposes of this appeal that there is a triable issue of fact as to

17

Gresham argues that it cannot be liable for violating this provision, or for common law wrongful termination, as it was not the Garcias' employer and not otherwise liable for Sierra Management's employment decisions. Our analysis begins and ends with agency.

"[A] principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal." (Civ. Code, § 2338.)

" 'An agent "is anyone who undertakes to transact some business, or manage some affair, for another, by authority of and on account of the latter, and to render an account of such transactions." [Citation.] "The chief characteristic of the agency is that of representation, the authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties. [Citations.]" [Citation.] "The significant test of an agency relationship is the principal's right to control the activities of the agent. [Citations.] It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent; the existence of the right establishes the relationship." [Citation.]' [Citation.]" (*Violette v. Shoup* (1993) 16 Cal.App.4th 611, 620.)

Here, Gresham, as the owner of the building, contracted with Sierra Management to manage the property. This fact alone establishes, at the very least, a triable issue of fact that Sierra Management was Gresham's agent in the management of the

_____

whether the Garcias were terminated on the basis of Albert Garcia's physical disability.

18

property, which would render Gresham liable for Sierra Management's wrongdoing in the course of the agency. Several cases under the federal Fair Housing Act recognize that a management company is the owner's agent in managing the property, and hold the owner liable for the management company's wrongdoing, even if it was not aware of the management company's acts. (*United States v. Balistrieri* (7th Cir. 1992) 981 F.2d 916, 930 [even if owner did not approve his rental agent's Fair Housing Act violations, the agent was acting in the scope of her authority, so the owner is liable]; *Castellano v. Access Premier Realty, Inc.* (E.D.Cal. 2016) 181 F.Supp.3d 798, 809 [when owner does not dispute that management company was its agent, owner is vicariously liable for management company's violations of the Fair Housing Act]; *United States v. Habersham Properties, Inc.* (N.D.Ga. 2003) 319 F.Supp.2d 1366, 1371-1375 [owner may be vicariously liable for management company's acts of discrimination, and also those of the management company's on-site property manager]; *Marya v. Slakey* (D.Mass. 2001) 190 F.Supp.2d 95, 102 [triable issue of fact exists that property owner of multi-bedroom house who allowed tenants to vote on their co-tenants may be liable, as principal, for her tenants' violation of Fair Housing Act].)[8]

Although each of these cases is concerned with the management company's acts of housing discrimination in connection with tenants at the owner's property, what is

[8] Gresham concedes that courts "often look to cases construing the FHA when interpreting the FEHA." (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1420.) In *Meyer v. Holley* (2003) 537 U.S. 280, 282, the United States Supreme Court held that the FHA imposes vicarious liability "in accordance with traditional agency principles."

important is that they allow for owner liability for its management company's acts of discrimination in the course of its agency in managing the owner's property. Here, the Garcias allege the management company (Sierra Management) improperly and discriminatorily fired them from their job as on-site property managers of Gresham's property. Because Sierra Management was charged by Gresham with managing its property, Sierra Management's hiring and firing of the Garcias appears to be within the scope of its agency. This creates a triable issue of fact as to Gresham's vicarious liability.

We note that the potential agency relationship exists as a result of the contractual relationship between Gresham and Sierra Management – a relationship acknowledged in Gresham's moving papers. Thus, Gresham's moving papers alone establish the existence of a triable issue of fact of agency, and we need not consider the Garcias' evidence in response. But we do.

The Garcias' evidence reinforces the conclusion that, at the very least, a triable issue of fact exists as to agency. Garcias' evidence was that Gresham was not a hands-off owner who transferred all responsibility for managing the property to Sierra Management and simply cashed the checks. Instead, Gresham's owners were neck-deep in the day-to-day operation of Sierra Management, and actually made the decision to terminate the Garcias' employment themselves. Gresham makes much of the fact that it is a partnership that has no employees. But if that is so, Gresham could act only through the individuals who controlled its two partners (the partners themselves being limited partnerships) – Doren and Seltzer. Doren and Seltzer interacted with the Garcias as to their duties in managing the Gresham property and there is evidence that they both participated in the

ultimate decision to terminate the Garcias.  Although Doren and Seltzer take the position that all of these acts were done only in their capacity as officers and employees of Sierra Management, the circumstances suggest they may have also been acting as partners in Gresham.  Indeed, Doren admitted that Gresham gets to decide "who it gets to hire as property managers," an admission which implies Doren and Seltzer may well have been acting on behalf of Gresham when they made decisions regarding whether the Garcias would remain as the on-site property managers.

Gresham's argument for summary judgment comes down to the assertion that, when firing the Garcias, Seltzer and Doren were wearing their "Sierra Management" hats and not their "Gresham" hats.  It would be a clever end-run around employee protection statutes if a business owner could create a "human resources company" as a separate legal entity responsible for hiring and firing employees, have the individual business owners run the human resources company as its officers, yet turn around and claim the business is not liable for the employment decisions made by the human resources company for its benefit.  The rules of agency prevent this sleight-of-hand.

*Laird v. Capital Cities/ABC* (1998) 68 Cal.App.4th 727, on which Gresham and the trial court relied, is not controlling on the question of agency.  In *Laird*, a terminated employee sued not her employer, but her employer's corporate parent.  (*Id.* at p. 731.)  The agency question was when can a subsidiary be considered the agent of its parent.  (*Id.* at p. 741.)  To find agency in that situation requires proof that the parent so controls the subsidiary that the subsidiary becomes the mere agent or instrumentality of the parent, and, specifically, that the parent

exercised control over the subsidiary's employment decisions. (*Ibid.*)  But the *Laird* test is inapplicable here.  Sierra Management was not a subsidiary of Gresham, Sierra Management contracted with Gresham to manage the property for it.  It is the actual agency arrangement arising from that contract, not an attempt to imply agency from joint ownership or corporate structure, which dooms Gresham's motion.

      C.     *We Need Not Address FEHA-Housing*

Because we find a triable issue of fact exists with respect to the employment causes of action, the summary judgment must be reversed.  Although Gresham moved in the alternative for summary adjudication, it does not argue on appeal that we should direct entry of summary adjudication if we reverse the summary judgment.

## DISPOSITION

The summary judgment is reversed.  The Garcias shall recover their costs on appeal.


                                        RUBIN, P. J.

I CONCUR:



     MOOR, J.

Albert Garcia et al. v. Gresham Apartments Investors
B299066


KIM, J. Dissenting


I respectfully dissent.

The majority observes that the court *could* have overlooked plaintiff's failure to comply with California Rules of Court rule 3.1116(c) and *should* have allowed plaintiffs an opportunity to cure their error by imposing reasonable sanctions for any continuances the court *may* have ordered. (Maj. at pp. 14–15.) But where, as here, "no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) Without a transcript of the proceedings during which the court sustained defendant's evidentiary objections, we do not know whether the court considered the propriety of a continuance or monetary sanctions. Nor do we know what, if any, objections or concessions any of the parties made in response. (*Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259 [a trial court's exercise of discretion will not be disturbed on appeal when the appellant has not provided a record that explains the trial court's reasoning].) On this record, I would not hold the court abused its discretion in its evidentiary rulings.

The majority suggests that even without the excluded evidence, the fact that defendant contracted with Sierra Management to manage the property was sufficient, on its own,

1

to render defendant liable for Sierra Management's employment decisions.  (Maj. at p. 18–19.)  I do not interpret any of the cases cited in the majority opinion to support such a proposition.  Based on the evidence that *was* properly before the trial court, I would affirm the court's granting of summary adjudication on the FEHA-employment discrimination claim.

Finally, I believe the majority was required to address the merits of the trial court's ruling on the FEHA-housing discrimination claim.  The court separately considered each of plaintiffs' claims against defendant and concluded that summary adjudication was appropriate.  Further, defendant devoted 25 pages of its respondent's brief to argue why the FEHA-housing discrimination claim fails as a matter of law.  I do not construe defendant as having failed to "argue on appeal that we should direct entry of summary adjudication if we reverse the summary judgment."  (Maj. at p. 22.)  I would affirm the court's granting of summary adjudication on the FEHA-housing discrimination claim.  In my view, plaintiffs were not tenants by virtue of their free occupancy in one of defendant's apartments as part of their compensation from Sierra Management.  (*Chan v. Antepenko* (1988) 203 Cal.App.3d Supp. 21, 23–25.)  Further, on these facts, plaintiffs could not establish "discrimination" within the meaning of Government Code section 12927, subdivision (c)(1).

I would affirm the judgment in full.

KIM, J.

2